**Philip G. BAIN, D.O.; and X–Ray & Nuclear Physicians, Inc., an Indiana Corporation, Appellants (Plaintiffs Below),**

v.

**The BOARD OF TRUSTEES OF STARKE MEMORIAL HOSPITAL; Spencer Grover; Michael Senetar; Almo Smith; William Schacht; and Fred Martindale, Appellees (Defendants Below).**

No. 25A03–8907–CV–289.

Court of Appeals of Indiana,
Third District.

Feb. 20, 1990.

Rehearing Denied March 30, 1990.

---

**2.** Roth's convictions for disorderly conduct and battery are inadmissible and excluded under

*Ashton, supra.*

Nick Katich, Lucas, Holcomb & Medrea, Merrillville, for appellants.

Charles W. Weaver, Nichols, Wallsmith & Weaver, Knox, for appellees.

STATON, Judge.

Philip G. Bain contests the grant of summary judgment in favor of Starke Memorial Hospital, resulting in the determination that Starke Memorial Hospital and Bain/X–Ray had not formed an enforceable contract under which Bain/X–Ray would provide radiology services to the hospital. While both parties raise variants of the same issue, in essence, the question before this court is:

Whether a genuine issue of material fact exists as to whether a contract was formed between the two parties, thus precluding summary judgment?

Reversed.

On November 10, 1972, Philip G. Bain, president and sole shareholder of X–Ray & Nuclear Physicians, Inc., (henceforth, "X–

Ray"), first contracted with Starke Memorial Hospital to provide radiology services for the hospital. The contract was signed only by Bain and the Executive Director of the hospital at that time, i.e., James W. Gordon. By addendum, this contract was extended through November 10, 1975; only Bain and the hospital's Executive Director signed the addendum. Later, this contract was extended, to remain effective through August 7, 1981.

On July 21, 1981, another contract was authorized by the Board of Trustees; afterward, on August 7, 1981, Bain and the Executive Director then in office, i.e., Jack L. Nichols, signed the contract.

On November 15, 1982, a new contract was executed between Bain and Starke Memorial Hospital. This three year contract was signed by Bain and the Executive Director—Spencer Grover.

In August of 1985, Executive Director Grover submitted "a 'generic' form of proposed contract" to Bain/X–Ray and to two other firms. (Record, p. 290.) During a meeting held on September 10, 1985, the Finance Committee made alterations and modifications to this "contract" and authorized Grover to submit it to Bain/X–Ray as a "final offer." Consequently, accompanied by a letter dated September 11, 1985, Grover submitted the modified contract to Bain/X–Ray. The letter stated that the Finance Committee reviewed the agreement and that "[t]he attached agreement has been reviewed by legal counsel and represents the *final offer.*" (Emphasis added.) (Record, p. 44.) The letter was signed by Spencer Grover. There was no indication that further Board action was required; and, although the contract contained a signature line for the Chairman of the Board above the signature line of the Executive Director, there was no indication that Grover's signature was only for a receipt, as the hospital contends. In his affidavit, Grover stated that he told Bain that Board approval would be required; however, according to Bain's deposition, Grover said no such thing.

On September 13, 1985, Bain and Executive Director Grover signed two copies of this contract, dating it September 24, 1985. Grover kept both signature pages; each kept a copy of the contract itself. However, according to both parties, on September 24th, the Board voted not to ratify the contract. (This action is not indicated by the actual minutes of the September 24th Board meeting.) Later, on October 22, 1985, the Board voted to let the existing contract expire without renewal. (The October 22nd minutes indicate that the Board did not consider Bain's contract at the September 24th meeting.)

Consequently, on October 30, 1986, Bain filed a complaint against the Board of Trustees of Starke Memorial Hospital and against certain members of the Board, seeking compensatory as well as punitive damages. Among other things, Bain alleged tortious interference with a contract, and breach of contract. Without entering findings of fact, the trial court granted summary judgment in favor of the Board.

Bain contends that summary judgment was improper, claiming that genuine issues of material fact exist, specifically pointing to the intent of the parties, whether the Executive Director had the authority to bind the hospital, whether the Finance Committee had the authority to extend an offer to Bain, and, finally, whether the hospital executed the contract. In response, the Hospital contends that summary judgment was proper, asserting that there was no execution by the Hospital and no delivery of the contract to Bain.

### Standard of Review

■ Summary judgment is appropriate when no genuine issue of material fact exists, thus entitling the moving party to a judgment as a matter of law. *Ewing v. Board of Trustees of Pulaski Mem. Hosp.* (1985), 486 N.E.2d 1094, 1097, *reh. denied, trans. denied.* A "material" fact is one that affects the outcome of the case; an issue is "genuine" if "it cannot be foreclosed by reference to undisputed facts." *Id.* Thus, while some aspects of a claim may involve conflicting facts and inferences, summary judgment would still be appropriate "if there is no dispute or conflict re-

garding a fact which is dispositive of the action." *Id.*

■ When determining whether summary judgment is proper, "[a]ll evidence must be construed in favor of the nonmovant and all doubts as to the existence of a material issue must be resolved against the movant." *Hostetler v. State Farm Fire & Cas. Co.* (1988), Ind.App., 521 N.E.2d 1357, 1359. Consequently, summary judgment would be inappropriate if conflicting inferences arise, even though no factual dispute may exist. *Id.* Finally, when this court reviews the grant of a motion for summary judgment, it does so from the "shoes of the trial court." *Id.*

### Genuine Issues of Material Fact

As stated above, for a grant of summary judgment to stand, there must be no genuine issues of material fact, i.e., there must be no dispute as to the facts or inferences surrounding the issues dispositive to the determinative question before the court. The question posed before the court below was whether a contract was formed between Bain/X–Ray and Starke Memorial Hospital for the radiology services of X–Ray. The grant of summary judgment in favor of the hospital indicates that the court found no genuine issues of material fact, thus entitling the hospital to judgment as a matter of law. We disagree.

The hospital contends that it did not execute a contract with Bain and that such a document was never delivered to him. Bain argues that material factual disputes exist as to whether the document in question is an enforceable contract. Bain is correct: the law of contracts and the law of principal and agent both indicate that genuine issues of material fact exist, precluding summary judgment.

### A. Principal & Agent

Although both parties assert different opinions as to who has the authority to contractually bind the hospital, the question in this case does not concern actual authority, but apparent authority. For, even if an agent does not have the actual authority to bind his principal in a contract, "[w]hen a principal manifests to a third party that his agent is authorized to enter negotiations or make representations on behalf of the principal, the agent is cloaked with apparent authority." *Warner v. Riddell Nat. Bank* (1985), Ind.App., 482 N.E.2d 772, 775, *reh. denied, trans. denied.*

Defined, "[a]pparent authority is that authority which a third person reasonably believes the agent to possess because of some manifestation from his principal." *Id.* "Placing the agent in a position to perform acts or make representations which appear reasonable to a third person is sufficient manifestation to endow the agent with apparent authority." *Id.* However, the "belief of the third person must have a reasonable basis." *Northwest Calf Farms, Inc. v. Poirier* (1986), Ind.App., 499 N.E.2d 1165, 1168, *reh. denied, trans. denied.*

■ Here, whether the situation justified Bain's belief that Grover and the Finance Committee acted on behalf of the Board of Trustees and Starke Memorial Hospital is a question dispositive to the case. Moreover, there is a factual dispute as to the determination of that issue: the facts do not lead only to the conclusion that Bain's belief in the apparent authority of Grover and the Finance Committee would be unjustified. Rather, several facts indicate that Bain could have reasonably believed that Grover and the Finance Committee had the authority to act on behalf of the Board and the hospital.

The hospital argues that Bain should have known that subsequent Board ratification was required because of Bain's previous involvement as a member on the Finance Committee and because of the signature line at the end of the contract for the Board Chairman. However, keeping in mind that we are to look at the facts and inferences favoring the nonmovant, the hospital's contention is not without contradiction.

Previous contracts were signed only by Bain and the Executive Director, including Grover; these were honored by the hospital/Board. In its brief, the hospital points

to Bain's testimony which indicates that he was aware of Board Ratification; Bain stated that as a member of the Finance Committee, he participated in ratifying contracts. However, the facts do not lead only to the conclusion that Board ratification always occurred *subsequent* to the signing of the contracts. For instance, in 1981, the Board had approved the contract before presenting it to Bain as an offer. No indication exists of ratification subsequent to Bain's acceptance.

Similarly, the facts do not indicate that Bain was aware that the Board had to ratify this contract *subsequent* to his acceptance, rather than already having done so. In fact, an inference can be drawn that Board approval had been obtained prior to the "final offer." In August, Grover presented Bain with a "generic," "proposed" contract. On September 9th, Bain was notified by Grover that the Finance Committee had modified and altered that proposed contract. On September 11th, Bain received a letter stating that the attached document, i.e., the contract in question, had been reviewed by the Finance Committee and represented the "final offer" to be presented to Bain.

The attached letter spoke on behalf of the Finance Committee, but was signed by Grover alone. Too, the attached letter was written on the hospital's letterhead; such would support Bain's belief in the apparent authority of Grover on behalf of the Finance Committee. Additionally, when questioned as to his knowledge about Finance Committee procedure, Bain stated that it was his contention that the Finance Committee had the power to enter into contracts for services.

Consequently, it would not be unreasonable for Bain to believe that Grover had the authority to sign a contract on behalf of the Finance Committee and bind the hospital, as had been done on previous occasions by previous Executive Directors. Therefore, because the facts do not lead only to the exclusion of apparent authority, summary judgment was improper.

## B. The Law of Contracts

Even though the facts indicate the possible presence of apparent authority, whether the document in question could be an enforceable contract is also a question dispositive to this case. Here, the facts allow for the formation of an enforceable contract pursuant to the law of contracts, thus supporting the conclusion that summary judgment was improperly entered in this case.

■■■ A contract is based upon an "offer and acceptance" and consideration—an offer must be extended and the offeree must accept it, the communication of acceptance being crucial. *Herald Telephone v. Fatouros* (1982), Ind.App., 431 N.E.2d 171, 174. Also essential to the formation of a contract is a "meeting of minds" of the contracting parties: the parties must have the same intent. *Wagoner v. Joe Mater & Associates, Inc.* (1984), Ind.App., 461 N.E.2d 706, 708. Thus, a "meeting of minds" must occur, and an offer must be made; once it is accepted, a contract is formed.

■■■ When interpreting a contract, the "cardinal rule" is to determine the parties' intent from their present and past business dealings. *Wallace v. Rogier* (1979), 182 Ind.App. 303, 395 N.E.2d 297, 301. However, although the surrounding circumstances at the time of contracting are considered when determining the intent of the parties, "[t]he court does not examine hidden intentions secreted in the heart of a person, but rather examines the final expression" of their intent. *Id.* In an express contract, such as that before the court, the intent of the parties is evidenced by spoken words or by a writing. *Wagoner, supra*, at 708.

■■■ Here, given the presumption of apparent authority, the facts do not preclude the possibility that the hospital extended an offer to Bain, who accepted it, forming a contract. However, if the hospital extended a "final offer" to Bain/X–Ray and Bain/X–Ray accepted it, at that time a contract would be formed; re-acceptance by the hospital would be unnecessary and

redundant. The hospital's "execution" would occur when it delivered the document to Bain for his acceptance; a second delivery would be unnecessary.

Thus, although the facts allow for the possibility of a contract being formed, the facts differ and allow different inferences to be drawn as to the intent of the parties and, thus, whether a "meeting of minds" occurred. Therefore, the law of contracts also indicates that the entry of summary judgment was improper.

Reversed.

HOFFMAN, P.J., and ROBERTSON, J., concur.