**Paulette FLYNN, Amy Edmunson, Shelley Turpin, and Steven Floyd, Plaintiffs,**

v.

**AERCHEM, INC., an Indiana Corporation and its subsidiaries; Michael Jeffers, Kevin Jeffers, and Maxine Jeffers, individually and as sole owners of AerChem and its subsidiaries, Defendants.**

**No. IP00–0182–C–B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

July 3, 2000.

---

David J. Colman, Bloomington, IN.

Daniel C. Emerson, Bose, McKinney & Evans, Indianapolis, IN.

## ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND TO STAY JUDICIAL PROCEEDINGS PENDING ARBITRATION

BARKER, Chief Judge.

On January 28, 2000, Plaintiffs, Paulette Flynn, Amy Edmunson, Shelley Turpin, and Steven Floyd, filed a complaint in this Court against Defendants, AerChem, Inc. and its owners, Kevin Jeffers, Michael Jeffers, and Maxine Jeffers (collectively "AerChem"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"),

as well as assault, battery, and intentional infliction of emotional distress. Defendants claim that Paulette Flynn's ("Flynn") claims are subject to an Employment Arbitration Agreement ("Agreement") and move to dismiss Flynn's claims, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and to compel arbitration of Flynn's claims pursuant to the Agreement. *See* Defs.' Mot. to Dismiss and to Stay Judicial Proceedings Pending Arbitration ("Defs.' Mot. to Dismiss") at 1. Defendants also move to stay the remaining Plaintiffs' claims pending arbitration of Flynn's claims. For the reasons discussed below, Defendants' motion to compel arbitration must be *GRANTED*. Defendants' motion to dismiss Flynn's claims is *DENIED*. Flynn's claims are *SEVERED* from those of the remaining Plaintiffs, pursuant to Federal Rule of Civil Procedure 21, and *STAYED* pending arbitration, pursuant to 9 U.S.C. § 3. Defendants' motion to stay the remaining Plaintiffs' claims must also be *DENIED*, allowing such claims to proceed independently of Flynn's claims.

### Background

Flynn was employed by AerChem, from August or September of 1995 through September 10, 1999. *See* Compl. ¶¶ 6, 49; Ans. ¶¶ 4, 13. On October 26, 1998, Flynn executed an "Employment Arbitration Agreement" with AerChem. *See* Defs.' Mot. to Dismiss, Ex. A. Through this Agreement, Flynn consented to submit all claims to arbitration "arising out of, concerning, or relating to Employee's employment" with AerChem, including all Title VII and tort claims. *Id.*

Flynn does not recall specifically signing the Agreement and claims the signature thereon does not match her own. *See* Pls.' Verified Mot. in Opp'n to Defs.' Mot. to Dismiss and to Stay Judicial Proceedings ("Pls.' Ver. Mot.") ¶ 1. Flynn further alleges that if she did indeed sign the Agreement, she did so "as part of an Employee Handbook" and "under economic duress without any awareness of the contents or

meaning" of the Agreement. *Id.* ¶¶ 2–3. Defendants support their motion with a copy of the Agreement and an affidavit of Ronald Tippman, whom they claim witnessed Flynn signing the Agreement. *See* Defs.' Mot. to Dismiss, Ex. A; Defs.' Reply, Ex. A.

## Discussion

As previously noted, AerChem requests that we dismiss Flynn's claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Our research indicates that even if we conclude that the Agreement is a valid contract, dismissal is not the proper method of disposing of Flynn's suit. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., directs that, upon request of one of the parties, a court is bound to stay a trial when it determines that an issue therein is, in fact, referable to arbitration pursuant to a written agreement to arbitrate. *See* 9 U.S.C. § 3; *see also Hires Parts Svc., Inc. v. NCR Corp.,* 859 F.Supp. 349, 354–56 (N.D.Ind.1994) (district court staying judicial proceedings, pursuant to 9 U.S.C. § 3, because permitting claims to proceed both in the district court and in arbitration is contrary to the FAA's purpose of avoiding wasted resources, delay, and expense of litigation). Therefore, we shall focus on whether there is a valid written agreement to arbitrate between Flynn and AerChem and if so, what is the scope of that agreement.

### I. Federal Policy and the Arbitration of Title VII Claims

The Agreement purportedly signed by Flynn and Ronald Tippman, acting on behalf of AerChem, called for the undersigned employee to agree:

> to submit to final and binding arbitration any controversy, dispute, or claim arising out of, concerning, or relating to Employee's employment with Company, including, but not limited to, any claim by Employee implicating rights under: (a.) Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 *et seq.;*
> (b.) The Civil Rights Act of 1991, 42 U.S.C. 1981 a[sic];

> . . . .
> (m.) Any contract, tort or common law.

Defs.' Mot. to Dismiss, Ex. A. Federal policy strongly favors arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In fact, the FAA provides that prospective agreements to arbitrate in the employment context are enforceable and valid. *See Koveleskie v. SBC Capital Markets, Inc.,* 167 F.3d 361, 364 (7th Cir.1999).

Much discussion has occurred over whether Congress intended to include Title VII claims within the scope of disputes subject to pre-dispute arbitration agreements. In response to that question, the Seventh Circuit has conclusively found a "clear congressional intent to encourage arbitration of Title VII and ADEA claims, not to preclude such arbitration." *Koveleskie,* 167 F.3d at 365 (quoting *Seus v. John Nuveen & Co.,* 146 F.3d 175, 183 (3rd Cir.1998)). In holding that Title VII claims are arbitrable, the Seventh Circuit relied on *Gilmer,* in which case the Supreme Court noted that employees who sign pre-dispute arbitration agreements do not agree to forego their substantive rights under statutes such as Title VII; rather, they allow disputes related to these rights to be resolved in "an arbitral, rather than a judicial, forum." *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Accordingly, an agreement such as the one between Flynn and AerChem to arbitrate federal claims, including Title VII claims, is valid and legally enforceable, save any defects in its formation. *See Gibson v. Neighborhood Health Clinics, Inc.,* 121 F.3d 1126, 1130 (7th Cir.1997); *see also Gilmer,* 500 U.S. at 35, 111 S.Ct. 1647.

### II. The Formation of a Contract under Indiana Law

Flynn challenges the Agreement's validity in several respects. She alleges Aer-

Chem failed to make an offer because the Agreement was never formally presented to her for evaluation and acceptance; she claims she did not accept the agreement because she did not sign it, and if she did sign it, she claims such an action was taken unknowingly, and therefore was not a valid acceptance. Each of these contentions is discussed below, as is the issue of whether sufficient consideration for the agreement exists.

A court cannot order arbitration unless a valid contract to arbitrate is found, and we look to ordinary state contract law to evaluate pre-dispute arbitration agreements, such as the one between AerChem and Flynn. *See Gibson,* 121 F.3d at 1130. In this case, all relevant events took place in Indiana, and the Agreement itself explicitly calls for construction according to Indiana law; therefore, we use Indiana law to evaluate the validity of the Agreement.[1] In Indiana, the burden of proving an enforceable arbitration agreement rests on AerChem, the party seeking to compel arbitration. *See Wilson Fertilizer & Grain v. ADM Milling Co.,* 654 N.E.2d 848, 849 (Ind.Ct.App. 1995).

A valid contract requires that an offer be made and accepted, with a meeting of the minds by the contracting parties. *See Bain v. Board of Trustees of Starke Mem'l Hosp.,* 550 N.E.2d 106, 110 (Ind.Ct.App.1990). For a meeting of the minds to exist, both parties must have the same intent. *See id.* The "cardinal rule" of contract interpretation calls for the parties' intent to be interpreted in light of the surrounding circumstances, including present and past business dealings; however, in cases where the agreement is evidenced by a written instrument, the parties' intent may be gleaned from the document itself. *Id.* Courts do not search for the parties' hidden, "secreted" intentions but instead examine the "final expression" of the parties' intent from the written agreement.

*Id.* In this case, we have a written instrument, the Agreement, which we look to in evaluating the parties' intentions.

## A. Offer and Acceptance

Flynn argues that AerChem's "offer" was insufficient because it was included within an employee handbook. She notes that the Indiana Supreme Court has held that a signed employee handbook was not a valid employment contract; however, that holding was expressly limited to the facts of that case. *See Orr v. Westminster Village North, Inc.,* 689 N.E.2d 712 (Ind. 1997).

That case has no bearing on the agreement in the case at bar. In *Orr,* the Indiana Supreme Court was asked to construe an entire employee handbook as a contract but it declined to decide whether Indiana would adopt such an exception to the at-will employment doctrine. *Id.* at 717, 721. Here, neither party has asked us to construe an employee handbook as an employment contract, though Flynn claims the Agreement was *part* of an employee handbook. *See* Pls.' Ver. Mot. ¶ 2. Despite this contention, she did not present any evidence beyond her own speculation to establish that the Agreement was part of a handbook. The Agreement was presented to us as a separate document, not as an attachment to an employee handbook, and on its face it bears no reference to any other handbook, agreement, guidelines, or documents. *See* Defs.' Mot. to Dismiss, Ex. A. This leads us to conclude that the Agreement is, in fact, an independent document. Therefore, we will evaluate it as such and determine its validity based solely on the surrounding circumstances. Flynn proffers no further evidence that AerChem's offer was insufficient. Accordingly, we hold that AerChem's offer was manifested in the Agreement drawn up and signed by their Executive Director of Finance, Ronald

---

1. In Indiana, a contract issue that can be determined without resort to extrinsic evidence is for the court and not a jury. *See id.*

Tippman ("Tippman"), who tendered it to Flynn. *See* Defs.' Mot. to Dismiss, Ex. A; Defs.' Reply, Ex. A.

Flynn also disputes that she ever accepted the Agreement. Despite the appearance of a signature at the bottom of the Agreement, which AerChem contends is Flynn's, she claims that she never saw the Agreement and, therefore, could not have signed it. *See* Pls.' Ver. Mot. ¶ 1. Alternatively, Flynn claims that if she did sign the Agreement, she did so as part of an Employee Handbook, which everyone was forced to sign, while under economic duress and without knowledge of its contents. *See id.* ¶¶ 2–3.

■ Failing to understand what one agrees to in a contract is not a viable excuse for non-performance. It is a basic tenet of contract law that a person is assumed to have read and understood documents that they sign; a lack of understanding or failure to read the contract's provisions does not relieve a party from the terms of that agreement. *See Clanton v. United Skates of America,* 686 N.E.2d 896, 900–01 (Ind.Ct.App.1997). "The freedom to contract includes the freedom to contract improvidently, and in the absence of countervailing policy considerations, private reservations or mistake[s] will not avoid the results of apparent consent." *Rutter v. Excel Indust., Inc.,* 438 N.E.2d 1030, 1031 (Ind.Ct.App.1982). If Flynn signed the Agreement, even without full knowledge of its terms, her signature acts an acceptance of the Agreement's terms.[2]

■ Flynn's arguments to the contrary, the evidence points to the clear conclusion

that Flynn signed and accepted the Agreement. The signature at the bottom of the Agreement matches her signature on other documents before this court. Furthermore, AerChem submitted a Declaration by Tippman to the effect that he witnessed Flynn execute the Agreement in question. *See* Defs.' Reply, Ex. A. Accordingly, we find sufficient evidence to allow us to conclude that Flynn, by her signature, accepted the Agreement.

**B. Consideration**

■ In addition to an offer and acceptance, both parties must be bound by the terms of an agreement, and the promisee must give some consideration for the promise. *See Gibson,* 121 F.3d at 1130–31; *Shaw v. S.S. Kresge Co.,* 167 Ind.App. 1, 328 N.E.2d 775, 779 (1975). The principal purpose behind requiring consideration is to provide a cautionary and an evidentiary function—to make it apparent to the promisor that the promise is legally binding, thus providing evidence of the promisor's intent that the agreement be legally binding. *See Gibson,* 121 F.3d at 1131. Indiana courts have used both a benefit-detriment and a bargained-for-exchange approach in defining consideration; the courts look for a promisor receiving a benefit or a promisee suffering some detriment, which was bargained-for in exchange for the promise. *See id.*

■ In the context of pre-dispute arbitration agreements, an employer gives sufficient consideration when it bargains for an employee's promise to arbitrate in

---

**2.** We do not take Flynn's argument that she "did not know the contents of the agreement" to be a claim that she failed to knowingly consent to arbitrate her Title VII claims. The Seventh Circuit has stressed the advantage of knowing and voluntary consent in the context of a pre-dispute arbitration agreement, but has yet to rule on whether this heightened standard is a prerequisite for proper assent to such an agreement. *See Gibson,* 121 F.3d at 1130. The heightened standard has been adopted by several courts when faced with contracts containing overly vague arbitration agreements. *See Penn v. Ryan's Family*

*Steakhouses, Inc.,* 95 F.Supp.2d 940, 950 (N.D.Ind.2000); *see also Prudential Ins. Co. of America v. Lai,* 42 F.3d 1299, 1305 (9th Cir. 1994); *but see Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 170 F.3d 1, 20 (1st Cir.1999); *Williams v. Cigna,* 56 F.3d 656, 660 (5th Cir.1995); *Beauchamp v. Great West Life Assurance Co.,* 918 F.Supp. 1091, 1098 (E.D.Mich.1996). We need not address whether such a heightened standard is required, however, as the Agreement between AerChem and Flynn explicitly outlines the claims to be arbitrated, including all Title VII claims.

exchange for the its assent to be bound by the arbitrator's decision. *See Gibson,* 121 F.3d at 1131; *Michalski v. Circuit City Stores, Inc.,* 177 F.3d 634, 636 (7th Cir. 1999). An employer's promise to provide a forum for the arbitration proceedings in exchange for the employee's agreement to arbitrate all employment disputes can also act as sufficient consideration. *See Penn v. Ryan's Family Steakhouses, Inc.,* 95 F.Supp.2d 940, 950 (N.D.Ind.2000). The Seventh Circuit has also indicated that an employer's promise not to terminate immediately an at-will employee in exchange for the employee's agreement to arbitrate all employment disputes could be sufficient consideration. *See Gibson,* 121 F.3d at 1132; *see also Leatherman v. Management Advisors, Inc.,* 448 N.E.2d 1048, 1050 (Ind.1983).

■ The Agreement itself demonstrates that AerChem and Flynn exchanged sufficient consideration to bind Flynn to her promise to arbitrate all disputes arising out of her employment with the company. First, AerChem promised to arbitrate all claims arising from Flynn's employment and to be bound by the arbitrator's decisions. *See* Defs.' Mot. to Dismiss, Ex. A ¶ 2. AerChem also agreed to be "responsible for any and all charges" arising from the arbitration. *Id.* ¶ 3. Finally, the Agreement states that Flynn's agreement to arbitrate all claims arising from her employment with AerChem is "[i]n consideration and as a condition of Employee's employment with Company." *Id.* ¶ 1. Such language, combined with Flynn's own allegation that she was forced to sign the agreement if she wished to retain her employment, *see* Mem. Support of Pls.' Mot. in Opp'n to Defs.' Mot. to Stay Judicial Proceedings ("Pls.' Mem.") at 2, indicates that AerChem gave sufficient consideration for Flynn's acquiescence in the Agreement. Accordingly, we conclude that there is sufficient evidence to satisfy all the elements necessary for contract formation under Indiana law: offer, acceptance, and consideration. We turn next to address the possible contract defenses raised by Flynn.

## III. Defenses to the Formation of a Contract

Flynn contends that we should deny AerChem's motion to compel arbitration, even if we find that all of the elements of a valid contract are present in the Agreement, contending that even if she agreed to arbitrate all claims, she did so involuntarily, as her finances were unstable at that time due to a pending divorce. *See* Pls.' Ver. Mot. ¶ 3. She claims that Defendants' knowledge of this fact, coupled with their threat to discharge her if she failed to sign the Agreement, constituted both duress and unconscionability. *See* Pls.' Mem. at 3–4. We discuss each of these matters below.

### A. Duress

■ Flynn claims that she was under economic duress when she signed the Agreement, and that Defendants knew of her situation and used it to their advantage in persuading her to sign the contract. The traditional definition of duress in Indiana does not include economic duress. *See Williamson v. Bendix Corp.,* 289 F.2d 389, 392 (7th Cir.1961). Modern courts, however, interpret duress as a deprivation of the free exercise of the victim's own will, which may include economically-based duress. *See City of Evansville v. Conley,* 661 N.E.2d 570, 574 (Ind.Ct. App.1996) (quoting *Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 283 (Ind.1983)). The assertion of duress must still be supported by evidence establishing that the duress resulted from the defendant's wrongful and oppressive conduct and not by the plaintiff's necessities. *See Williamson* 289 F.2d at 393; *Day v. Bicknell Minerals, Inc.,* 480 N.E.2d 567, 571 (Ind.Ct.App.1985). Mere threats, inconvenience, or delay do not constitute duress unless they truly subvert the victim's will. *See Raymundo,* 449 N.E.2d at 283.

In *Day,* the court examined a situation in which UM took full advantage of the perilous economic condition of Bicknell ("BMI") and its shareholders in negotiating the purchase of that company from the

BMI shareholders. *See Day*, 480 N.E.2d at 571. The plaintiff-shareholders claimed that their personal liability for their former company's defaulted debt caused a complete overbearing of their will in negotiating the sale. *See id.* The court found that while UM took full advantage of the shareholders' dire straits, BMI's poor financial shape was due to its own actions; no act or omission by UM caused BMI to fail to pay its notes or caused the banks to issue the declaration of default against the shareholders. *See id.* Based on this information, the court concluded that UM had not acted in any wrongful manner nor had BMI's shareholders been deprived of their free will; therefore, UM could not be liable for causing BMI's shareholders to sign an agreement under duress. *See id.*

■ Flynn's situation is comparable to that of the shareholders in *Day*. Like the BMI shareholders, Flynn's personal decisions, not AerChem's actions, were the cause of her economic distress. She found herself in economic jeopardy because of her pending divorce, not because AerChem was threatening to discharge her if she refused to sign the agreement. Flynn's economic instability began before AerChem ever threatened to fire her, and although the executives of AerChem may have been well aware of and exploited her situation, no act or omission by AerChem was the source of her financial troubles. Flynn was an at-will employee at AerChem; therefore, AerChem had the right to terminate her employment at any time, with or without cause. *See Orr*, 689 N.E.2d at 717. Given this situation, AerChem's conditioning of Flynn's continued employment on her agreement to arbitrate all claims arising therefrom was not a wrongful act.

Furthermore, Flynn has not claimed that but for AerChem's threat to fire her, she would not have signed the agreement. While losing her job with AerChem for failing to sign the Agreement might have caused Flynn some inconvenience, considering the economic hardship she faced due to her pending divorce, it did not rob her of her volition. Flynn at all times retained the option of refusing to sign the Agreement and seeking other employment, if necessary. Accordingly, we find AerChem's tactics in persuading Flynn to agree to arbitration not to amount to duress.

### B. Unconscionability

■ Flynn also claims that the tactics used by AerChem to obtain her signature on the Agreement were unconscionable. A contract is unconscionable when there is a great disparity in bargaining power that leads the weaker party to sign an agreement unwillingly or unaware of its terms, or when an agreement is one that "no person not under delusion, duress or in distress would make," or one that "no honest and fair [person] would accept." *Houin v. Bremen State Bank*, 495 N.E.2d 753, 758 (Ind.Ct.App.1986). However, a contract is not unenforceable merely because one party in some way enjoys an advantage over the other. *See id.*

■ While arguably there was a disparity in bargaining power in the case at bar, the disparity was not great enough to sustain a finding of unconscionability. Although AerChem had the power to terminate Flynn's employment, Flynn possessed the corresponding power to refuse to sign and leave its employ, thereby withholding her services from AerChem. Flynn's services obviously were important to AerChem; we were told, for example, of Kevin Jeffers' telephone call to her at her home while she was on medical leave, making various concessions in an effort to coax her into returning to work. *See* Compl. ¶ 30. Additionally, the Agreement between the parties is not one that "no sensible person not under delusion or distress would make, and such as no honest and fair man would accept." We view the agreement signed by Flynn as commonplace in the employment setting. *See generally, Gilmer*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26; *Koveleskie*, 167 F.3d 361. Flynn has not suggested that she would not have signed this Agreement had she read the document without pressure from AerChem. Accord-

ingly, we find that neither AerChem's actions in obtaining Flynn's signature on the Agreement nor the Agreement's terms were unconscionable.

### IV. Effect of the Arbitration Agreement

Pre-dispute agreements to arbitrate, such as the one that Flynn executed, are expressly approved of by the FAA. *See* 9 U.S.C. §§ 1–16. Our review indicates that the AerChem/Flynn Agreement comports with federal policy and Indiana law, that it withstands Flynn's challenges to contract formation, and that it requires the arbitration of all claims by Flynn against Aer-Chem as well as against Kevin, Michael, and Maxine Jeffers. The Title VII claim qualifies for arbitration under Section 1(a) of the Agreement, and the intentional infliction of emotional distress, assault, and battery claims are within Section 1(m) of the Agreement. *See* Defs.' Mot. to Dismiss, Ex. A. The Agreement binds the parties to arbitrate "all claim[s] arising out of, concerning, or relating to Employee's employment" with AerChem, including Flynn's claims against Defendants. Accordingly, pursuant to 9 U.S.C. §§ 3–4, we hereby *ORDER* Flynn to submit her claims to arbitration, consistent with the terms of the Employment Arbitration Agreement, and we *STAY* any further judicial action on Flynn's claims pending a resolution resulting from the arbitration.

### V. Stay of Remaining Plaintiffs' Claims Pending Arbitration

Having stayed Flynn's claims, we turn to AerChem's motion to stay the remaining Plaintiffs' claims as well. AerChem contends that each Plaintiff's claims are so intertwined as to warrant an order to stay them as well, pending arbitration of Flynn's claims. *See* Defs.' Mot. to Dismiss ¶ 2. In fact, we believe the opposite is true. While all the claims involve many of the same actors and similar behavior, each Plaintiff's case is premised on independent factual scenarios; in fact, each Plaintiff's claims are set out separately in the complaint. *See* Compl. We perceive no compelling reason to stay the remaining Plain-

tiffs' claims pending the resolution of Flynn's arbitration. Federal Rule of Civil Procedure 21 allows "[p]arties [to] be dropped or added by order of the court … of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately." Fed.R.Civ.P. 21. Accordingly, in the interest of judicial efficiency, we also hereby *ORDER* that Flynn's claims be *SEVERED* from the claims of the other Plaintiffs to allow the claims of Amy Edmunson, Shelley Turpin, and Steven Floyd to proceed promptly and without impediment.

### Conclusion

For the foregoing reasons, AerChem's motion to compel arbitration of Plaintiff Flynn's claims is hereby *GRANTED*, and Paulette Flynn is hereby *ORDERED* to submit to and proceed with arbitration. In addition, AerChem's motion to dismiss Flynn's claims is *DENIED*. All claims by Plaintiff Paulette Flynn are also hereby *SEVERED* and *STAYED* pending arbitration. AerChem's motion to stay proceedings relating to the claims of Plaintiffs Amy Edmunson, Shelley Turpin, and Steven Floyd is *DENIED*; such claims are ordered to proceed independently of Flynn's claims.