Mary Jane **HUDSON**, Plaintiff,

v.

**INDIANA LIMESTONE COMPANY, INC.**, Defendant.

No. NA99–233–C–B/G.

United States District Court, S.D. Indiana, New Albany Division.

April 12, 2001.

Michael K. Bonnell, Spencer, IN, for plaintiffs.

David J. Carr, Johnson, Smith, Pence & Heath LLP, Indianapolis, IN, for defendant.

## CORRECTED ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BARKER, District Judge.

### I. *Introduction.*

This is a sex harassment and retaliation case. The Plaintiff Mary Jane Hudson alleges that her supervisor at her place of work, Indiana Limestone Company, Inc., sexually harassed her and that, after she complained of the harassment, she was discharged from employment in retaliation for having complained.

The case is before the Court on Indiana Limestone's Motion for Summary Judgment on its counter-claim, which raises a dispositive threshold matter. Indiana Limestone claims that Hudson signed a valid release agreement, effectively abandoning any action against Indiana Limestone, including the present action for sex harassment and retaliation. Accordingly, the issue before the Court is whether the release Hudson signed is enforceable. That issue raises, in turn, the questions of whether Hudson knowingly and voluntarily waived her right to sue by signing the release agreement and whether she signed the release under economic duress. Because the Court finds that the release agreement is enforceable, the Court GRANTS Indiana Limestone's Motion for Summary Judgment and dismisses Hudson's Title VII lawsuit.

### II. *Statement of Facts.*

The only facts pertinent to the current inquiry are those surrounding Ms. Hudson's entering into the General Release. We state those in a light reasonably most favorable to Ms. Hudson and resolve any disputed facts in her favor.

Ms. Hudson began work for Indiana Limestone as a Security Guard on April 4, 1997. She worked for Indiana Limestone until July 16, 1998 when she was discharged. James Aff., ¶ 3; Defendant's Statement of Material Facts (hereafter "Def. SOMF"), ¶ 1. At her termination interview, Indiana Limestone's General Manager George James and another employee Mark Bryant told Ms. Hudson that she was entitled to $520.00 in back pay plus $230.75 in paid time off. Mr. James told her that she could also receive an additional $260.00 in severance pay (one week's wages) plus one month of health care insurance premiums valued at $466.21 by signing an agreement releasing Indiana Limestone from all potential claims arising from her employment, including those arising under federal law. Def. SOMF, ¶¶ 2. Mr. James explained to Ms. Hudson that she was entitled to the $750.75 in back pay and accrued paid time and offered payment to her of that amount. James Aff., ¶ 9. He also explained that the $726.21 in severance and insurance premiums were extra compensation, above and beyond what she was owed. Def. SOMF, ¶ 4. Ms. Hudson acknowledges that Mr. James "might have explained to [her] that she was only entitled to the severance pay and payment of the health care premium if she signed the release" and that Mr. James "may have explained" that payment of the severance and health care premium were "extra compensation." But Ms. Hudson insists that she believed that she would not receive her regular pay—that is, the $750.75 in back pay and paid time off—unless she signed the release. Plaintiff's Response to Statement of Material Facts (hereafter "Pl. Response"), ¶¶ 3, 4.

Although the release is far from a model release and waiver, it clearly provides that, by executing the release, Ms. Hudson was accepting monetary consideration, $726.21, in exchange for abandoning any cause of action arising from facts pertaining to her employment at Indiana Limestone. Ms. Hudson acknowledges that the $726.21 was above and beyond what the company owed her, although she believes that the compa-

ny owed her more than it paid her in "extra" compensation. Referring to the $726.21, she stated succinctly: "It's extra, but it's not extra to the point of what I feel like I should have got." Hudson Dep., p. 223. Ms. Hudson asked for eight weeks of severance, but was told that one week was all Indiana Limestone was willing to pay. James Aff., ¶ 13. The release expressly states that Ms. Hudson is giving up her right to sue under federal and state law and it expressly limits itself to events that arose prior to the date of her termination. Def. SOMF ¶ 6.

Indiana Limestone's General Manager George James testified that, when Ms. Hudson made reference to "harassment" at her termination meeting of July 16, he told her that if she believed she had been harassed "she absolutely should not sign the General Release, but should pursue it." James Aff., ¶ 13. Ms. Hudson replied: "It's no big deal, I'll sign it." James Aff., ¶ 13; Pl. Brief, p. 14. Although the release permitted Ms. Hudson to review its terms with "advisors" of her choice, she read and signed the General Release at her termination meeting of July 16, 1998.

Ms. Hudson now alleges that the release agreement is not enforceable for two reasons: first, because her signing was not knowing and voluntary; and second, because she signed it under duress, in the sense that she believed she would not have received her back pay if she did not sign it. Def. SOMF ¶ 5; Pl. Response ¶ 5.

Indiana Limestone seeks summary judgment on the ground that Ms. Hudson's release is an absolute bar to her Title VII lawsuit. Accordingly, even if all of Ms. Hudson's allegations of harassment and retaliation were true, Indiana Limestone still would be entitled to prevail because Ms. Hudson abandoned those claims as a matter of law.

### III. *Summary Judgment Standard*

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir.1998).

On a motion for summary judgment, the burden rests on the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment. *Id.* at 322–23, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265. "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 249–52, 106 S.Ct. 2505).

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge,*

24 F.3d at 920. Therefore, in considering a motion for summary judgment, we draw all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi,* 123 F.3d 956, 962 (7th Cir.1997). If genuine doubts remain, and a reasonable factfinder could find for the party opposing the motion, summary judgment is inappropriate. See *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Waldridge,* 24 F.3d at 920.

### IV. *Analysis.*

#### A. *The Enforceability of the Release.*

The law favors the informal resolution of disputes that might otherwise give rise to litigation. *Vaughn v. General Foods Corporation,* 797 F.2d 1403, 1416 (7th Cir.1986), *cert. denied,* 479 U.S. 1087, 107 S.Ct. 1293, 94 L.Ed.2d 149 (1987). See *Castlewood Property Owners Association, Inc. v. Trepton,* 720 N.E.2d 10, (Ind.Ct. App.1999). An employee may abandon her Title VII right to sue her former employer for harassment or discrimination. If she does so by entering into a release agreement, the agreement is enforceable so long as she entered into the agreement voluntarily and knowingly. *Alexander v. Gardner–Denver,* 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1022 n. 15, 39 L.Ed.2d 147 (1974). As the Seventh Circuit noted in *Pierce v. Atchison Topeka and Santa Fe Railway Co.,* 110 F.3d 431, 438 (7th Cir. 1997) ("*Pierce II*"): "Knowing and voluntary consent is . . . a prerequisite to the effectiveness of waivers of federal antidiscrimination claims." *Also see Wagner v. NutraSweet Company,* 95 F.3d 527, 532 (7th Cir.1996).

What constitutes "knowing and voluntary" consent? The Seventh Circuit outlined the following factors in *Pierce v. Atchison, Topeka and Santa Fe,* 65 F.3d 562, 571 (7th Cir.1995) ("*Pierce I*"):

> (1) the employee's education and business experience; (2) the employee's input in negotiating the terms of the settlement; (3) the clarity of the agreement; (4) the amount of time the employee had for deliberation before signing the release; (5) whether the employee actually read the release and considered its terms before signing it; (6) whether the employee was represented by counsel or consulted with an attorney; (7) whether the consideration given in exchange for the waiver exceeded the benefits to which the employee was already entitled by contract or law; and (8) whether the employee's release was induced by improper conduct on the defendant's part.

Contrary to defendant's suggestion, interpretation of a release involving Title VII is not strictly a matter of contract law. The Seventh Circuit rejected such an approach in *Pierce II,* where it adopted a "totality of circumstances" approach. Additionally, the burden of showing "knowing and voluntary" consent is on the employer. 110 F.3d at 438. Still, since the employer cannot carry the entire burden of proving a negative, "[t]he plaintiff must come forward with specific evidence sufficient to raise a question as to the validity of the release under the totality approach. . . ." *Id.*

With these criteria in mind, we look to the General Release at issue here and into the circumstances surrounding Ms. Hudson's signing of it. The Release unambiguously provides that, by executing it, Ms. Hudson was accepting $726.21, in exchange for abandoning any cause of action arising from her employment at Indiana

Limestone. Ms. Hudson admits that the $726.21 was above and beyond what the company owed her, although she believes that the company owed her more than it paid her in "extra" compensation. Faced with the offer, Ms. Hudson asked for eight weeks of severance instead of one; she was told that one week was the most the company would offer. James Aff., ¶ 13. The release expressly states that Ms. Hudson is giving up her right to sue under federal and state law and it expressly limits itself to events that arose prior to the date of her termination. Def. SOMF ¶ 6. The Release provided Ms. Hudson with an opportunity to seek advice or counsel. Neither the Release itself nor anything Mr. James said suggests that Ms. Hudson was under time pressure to sign it. Significantly, Ms. Hudson does not challenge Mr. James's statement that he told her at the July 16 meeting that, if she really believed she had been the victim of harassment, then she should not sign the agreement but should pursue her rights. This statement tends to support the proposition that Ms. Hudson knew or should have known that she was abandoning rights pertaining to harassment. And Ms. Hudson does not allege that Indiana Limestone engaged in deceptive or other unlawful practices to induce her to sign. She nowhere alleges, for example, that Mr. James or anyone else at Indiana Limestone misrepresented the terms of the General Release. In sum, the facts pertaining to factors 2, 3, 4, 5, and 7 militate in favor of a knowing and voluntary waiver.

### B. Hudson's Arguments in Opposition to Summary Judgment.

 Ms. Hudson argues in opposition that her waiver was not knowing and voluntary and that she signed the General Release under duress. She correctly observes that consideration of whether a waiver is knowing and voluntary is an inquiry into "the mental state of the party who is purported to have waived those rights" and that this permits her to introduce evidence from which a trier of fact could reasonably infer that she did not understand the legal consequences of her actions. *Pierce II*, 110 F.3d at 442. But Ms. Hudson has not presented specific evidence that might reasonably raise a question as to whether her waiver was knowing and voluntary or whether she signed the waiver under duress.

 As to the knowing and voluntary factor, Ms. Hudson makes one argument and implies another. She argues that "the crucial factor" in the analysis is whether the individual abandoning her rights is represented by a lawyer. Pl. Brief, p. 11. It is true that where a lawyer represents the releaser, a presumption of knowing and voluntary waiver is raised. *Pierce II*, 110 F.3d at 437. But the absence of a lawyer does not create the opposite presumption. The fact that the releaser has not consulted an attorney is one factor in the analysis, but it is not determinative. In *Wagner*, for example, one plaintiff signed a release agreement without consulting an attorney and the Seventh Circuit affirmed summary judgment as to her voluntary and knowing waiver. 95 F.3d at 530, 532. The Seventh Circuit also noted in *Fortino v. Quasar Co.*, 950 F.2d 389, 394 (7th Cir.1991) that "[r]epresentation and negotiation cannot be the sine qua non of an effective waiver." *Also see Merrill Lynch, Pierce, Fenner & Smith v. Adcock*, 176 F.R.D. 539, 545 (N.D.Ill.1997).

Ms. Hudson also implies, without quite arguing, that she lacked the education and other personal resources to enter in to such an agreement in a knowing and voluntary manner. Ms. Hudson says that she has low self esteem, tends to be deferential to authority, and was under a lot of stress—some of which was caused by the

harassment and termination—when she signed the agreement. Pl. Brief, pp. 12–14. Even assuming her claims to be true, such subjective factors cannot be the basis upon which an individual may invalidate an otherwise lawful agreement. Under more extreme circumstances, a New York district court upheld the waiver of an individual who claimed that he abandoned his *Miranda* rights in the throes of post-traumatic stress disorder, so that the waiver could not have been knowing and voluntary. He argued that "three months of threats, torture, denial of proper sustenance, and fear at the hands of the Philippine interrogators and the knowledge that he had already confessed, influenced the defendant in such a manner so that he could not have made a conscious and deliberate choice when asked to waive his rights after leaving the Philippines." *United States v. Yousef,* 925 F.Supp. 1063, 1077–1078 (S.D.N.Y.1996). The New York court held that, even if the underlying facts were true, the individual failed to present evidence showing that the authorities to whom he gave the release acted in a coercive manner or overwhelmed his will not to abandon his rights. *Id.*

■ This brings us to Ms. Hudson's argument that she signed the General Release under duress, an argument that focuses at times specifically on economic duress and at other times on the kind of emotional or mental stress already discussed. Duress is characterized as "the taking of undue advantage of the business or financial stress or extreme necessities or weaknesses of another," as contrasted with placing another in "a difficult bargaining position or the pressure of financial circumstances." *Pierce I,* 65 F.3d at 569. As this Court noted in *Flynn v. Aerchem, Inc.,* 102 F.Supp.2d 1055, 1061–1062: "Modern courts ... interpret duress as a deprivation of the free exercise of the victim's own will, which may include economically-based duress." *Citing*

*Raymundo v. Hammond Clinic Ass'n,* 449 N.E.2d 276, 283 (Ind.1983). But a party alleging duress must still present evidence establishing that the duress resulted from the defendant's wrongful and oppressive conduct and not by the plaintiff's necessities. As we noted in *Aerchem,* "[m]ere threats, inconvenience, or delay do not constitute duress unless they truly subvert the victim's will." *Id.*

■ Ms. Hudson nowhere alleges that Mr. James or anyone else at Indiana Limestone "subverted her will" or otherwise coerced her into signing the agreement. Nor does she present any evidence that Mr. James conditioned payment of the moneys owed to her on her signing it. To the contrary, Mr. James's testimony is unchallenged that he counseled Ms. Hudson *not* to sign the agreement but to pursue her harassment claim if she really believed she had been the victim of harassment. Indeed, Ms. Hudson acknowledges that she responded to Mr. James's suggestion: "It's no big deal, I'll sign it." Pl. Brief, p. 14. Such conduct is inconsistent with taking advantage of Ms. Hudson's alleged weaknesses. Nor does Ms. Hudson present any evidence tending to raise an inference that she had no option other than to sign the General Release.

■ Finally, Ms. Hudson argues that she believed she *had* to sign the General Release in order to get what she calls her "regular pay," that is the $750.75 to which she was entitled. But her claim is fatally weakened by her admission supporting Mr. James's testimony that Mr. James may have explained to her that he was talking about two kinds of payment: one, a sum to which she was entitled in back pay and pay for time off; and another which represented compensation in the form of severance and insurance premiums, which was "extra" compensation, above and beyond what she was entitled to.

In other words, Ms. Hudson presents no evidence, beyond her statement of belief, to support an inference that Mr. James conditioned paying her the amount to which she was entitled on her signing the release. Nor does she present any other evidence showing that she would not have received her "regular pay" unless she signed it. Meanwhile, Mr. James has testified that he offered Ms. Hudson payment for "all back pay and accrued paid time" independently of the General Release. James Aff., ¶ 9. Ms. Hudson's belief that she would not receive the pay to which she was entitled, notwithstanding the information she acknowledges she had, is the kind of "subjective misunderstanding" which cannot be allowed to defeat an otherwise valid release. *Pierce II,* 110 F.3d at 442. For these reasons, we hold that the General Release is enforceable and that Ms. Hudson's assent to the release was knowing and voluntary and not the product of duress. Accordingly, Ms. Hudson's complaint is dismissed pursuant to Fed. R.Civ.P. 56.