**Frederica GEIGER and Deborah Sadler, Plaintiffs,**

v.

**RYAN'S FAMILY STEAK HOUSES, INC., Dan Johnson, individually and in his Representative Capacity, and Employment Dispute Services, Inc., Defendants.**

No. IP 99–1335–C–B/S.

United States District Court, S.D. Indiana, Indianapolis Division.

March 21, 2001.

---

Lisa L. Schneider, Lisa L. Schneider and Associates, Fishers, IN, for plaintiffs.

Stephen F. Fisher, Jackson Lewis Schnitzler & Krupman, Greenville, SC, Melvin Hutson, Melvin Hutson PA, Green-ville, SC, Byron L. Myers, Indianapolis, IN, for defendants.

## ENTRY DENYING DEFENDANTS' MOTION TO DISMISS

BARKER, District Judge.

Plaintiffs, Frederica Geiger ("Geiger") and Deborah Sadler ("Sadler"), allege that the manager of the restaurant where they worked, Defendant, Dan Johnson ("Johnson"), sexually assaulted and battered them. Plaintiffs further allege that their employer, Defendant, Ryan's Family Steak Houses, Inc. ("Ryan's"), created a hostile environment by allowing Johnson's actions to continue, thereby discriminating against them on account of their sex, and retaliated against them for complaining about Johnson's conduct, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000 et seq. In addition to these federal claims, Plaintiffs raise a number of state-law tort claims against both Johnson and Ryan's. Johnson and Ryan's now move for dismissal of this action, pursuant to Federal Rule of Civil Procedure 12(b)(6), or, alternatively, for a stay of these proceedings and an order compelling the Plaintiffs to submit their claims to arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq.. Johnson and Ryan's contend that as a part of their employment contract the Plaintiffs agreed to arbitrate all employment-related disputes in a forum provided by Defendant, Employment Dispute Services, Inc. ("EDSI"). Plaintiffs respond that the alleged arbitration agreement is not valid and that Ryan's and EDSI committed both actual and constructive fraud in obtaining Plaintiffs' signatures on said agreement. For the reasons explicated below, we DENY Defendants' motion.[1]

1. In addition to the Defendants' motion, Plaintiffs previously filed a motion for partial summary judgment against Ryan's as to the actual and constructive fraud counts of the complaint which we denied by Entry of October 3, 2000. Plaintiffs now request that we reconsider our denial, which request we DENY. Plaintiffs also have pending a com-

### Factual Background

Due to the procedural posture of this case, the only relevant facts relate to the manner in which the Plaintiffs applied for, and were hired for, their employment with Ryan's; we need not recite the factual allegations relating to the treatment of Geiger and Sadler after they began working for Ryan's. Geiger and Sadler allege that they were first employed by Ryan's as servers in October, 1996; Geiger was interviewed and hired by Jeff Theil ("Theil"), a Ryan's General Manager, and Sadler by Johnson, a Ryan's restaurant Manager. Compl. ¶ 17.

Prior to their interviews, both Geiger and Sadler were required to fill out Ryan's standard employment application packets. *Id.* ¶¶ 110, 121. The application packets contained an "Agreement to Arbitration Form" ("Arbitration Agreement" or "Agreement"), a Ryan's application for employment, and the "EDSI Rules and Procedures" ("EDSI Rules" or "Rules"). Aff. of James Randolph Hart ("Hart Aff."), Ex. A, Ryan's Application Packet; Compl. Exs. A (Arbitration Agreement signed by Geiger) and B (Arbitration Agreement signed by Sadler). The second page of the application packet contains a conspicuous notice to applicants, stating:

NOTICE TO ALL APPLICANTS

In order for you to be considered for employment at Ryan's Family Steak Houses, Inc., you must agree to the terms and conditions in the attached Job Applicant Agreement to Arbitration of Employment Related Services ("Arbitration Agreement"). Your failure to sign and accept the Arbitration Agreement and its related EDSI Rules and Procedures will terminate the job application process. A copy of the EDSI Rules and Procedures is provided to you with this application package. Should you have any questions regarding the Arbitration Agreement and how it works, please ask the manager conducting your interview.

Hart Aff., Ex. A. The employment application itself is not distinctive, except that it includes at the top the following statement: "THE ENTIRE APPLICATION FORM MUST BE COMPLETED AS WELL AS THE ATTACHED ARBITRATION AGREEMENT PRIOR TO BEING CONSIDERED FOR HIRE!" Hart Aff., Ex. B. The bulk of the parties' dispute at this stage involves the interrelationship of these two documents, so we discuss below their provisions in detail.

### A. The Arbitration Agreement

The Arbitration Agreement purports to be a contract between the job applicant and EDSI and must be signed by the applicant. *E.g.,* Compl. Ex. A, Arbitration Agreement. The Agreement informs Ryan's applicants that Ryan's (unnamed, but referred to as "Your potential Employer ('signatory company' or 'Company')"):

has entered into an agreement with Employment Dispute Services, Inc. [EDSI] to arbitrate and resolve any and all employment-related disputes between the Company's employees (and job applicants) and the Company. The purpose of this agreement is to provide You and the Company a forum in which claims or disputes with the Company and any other signatories may be resolved by arbitration rather than litigation.

*Id.* at 1. The specifics of the Arbitration Agreement are as follows:

1. Any employment-related dispute between the Company, Me, and/or other signatories which would otherwise be brought in ... court will be brought

bined motion for sanctions and for leave to file a sur-reply on the motion to dismiss. As we explain below, the motion for sanctions is *GRANTED* and the motion for leave to file a sur-reply is *DENIED AS MOOT.*

ONLY in the [EDSI] arbitration forum and under [EDSI] Rules and Procedures, as modified and amended from time to time. (Other signatories to the same Agreement with [EDSI] may be, for example, supervisors, managers, and agents of the Company.)

2. In consideration of the agreement by EDSI to provide an arbitration forum, Rules and Procedures, and a hearing and decision based on any claim or dispute, I (employee/job applicant) may file or defend, I understand and agree to the following

A. Except as to [state or federal administrative proceedings], any and all disputes I may have with the Company, its supervisors, managers or other agents of the Company, or that the Company its supervisors, managers or other agents may have with Me which would otherwise be decided in court, shall be resolved only through arbitration in the [EDSI] forum and NOT THROUGH LITIGATION IN STATE OR FEDERAL COURT.

B. The decision of an [EDSI] arbitration panel is final and binding on all parties. . . .

C. **This agreement is with EDSI, not with the Company**. . . .

D. The Company and any successor or assign, its signatory supervisors, managers and other agents, are "third party beneficiaries" of My agreement with [EDSI], and I am a "third party beneficiary" of others' agreements with [EDSI]. . . .

E. I absolutely *must* use the [EDSI] forum for any and all employment-related disputes and/or claims and/or related tort claims I may have against the Company and all other signatories to this Agreement which would otherwise be brought in court, even if this Agreement

has been terminated since the date of the claim. . . .

. . . . .

G. My Agreement shall continue for the period of My employment with the Company unless mutually terminated in writing by EDSI and Me

. . . . .

I. The Agreement is effective immediately. *"I understand I have the right to consult with an attorney of my choice."*

J. I have read the Agreement carefully and have been given the opportunity to read and consider the full [EDSI] Rules and Procedures. I knowingly and voluntarily agree to be bound by the terms and conditions of the Agreement and [EDSI] Rules and Procedures, as modified and/or amended from time to time.

*Id.* at 1–2.

### B. EDSI Rules and Procedures

The application packet also included a copy of the EDSI Rules, which did not require the job applicant's signature to evidence knowledge or agreement with them. At the time that Geiger and Sadler applied for positions with Ryan's, the Rules stated that "[t]he signing of an [EDSI] Agreement constitutes agreement to comply with the applicable Rules and Procedures of [EDSI] then in effect. . . ." Pls.' Br. in Opp'n to Def.'s [sic] Mot. to Dismiss ("Pls.' Opp'n Br."), Ex. 3a, EDSI Rules, Art. III, sec. 2. These Rules contained the following relevant provisions:

### 1. Panel of Adjudicators

The Rules called for a panel of three adjudicators to be chosen by the parties from pools of potential arbitrators selected by EDSI alone. EDSI Rules, Art. IX, secs. 1, 2. The first selection pool consisted

of "[s]upervisors or managers of an employer signatory to [EDSI] Agreements;" the second pool was composed of "[n]onexempt employees (Non exempt as defined by the federal Wage and Hour Law) who are signatory to [EDSI] agreements;" and the third pool was made up of "[a]ttorneys, retired judges, or other competent professional persons not associated with either party," except that the third member of any panel "shall be a licensed attorney," if the claimed amount in controversy exceeds twenty thousand dollars. *Id.* Art. IX, secs. 1, 4.

EDSI provided the parties with a list of three names of potential adjudicators chosen from each selection pool. *Id.*, Art. IX, sec. 2. Each party was to strike a potential adjudicator from that list "for cause" by filing a motion with EDSI (and we presume that the name would be replaced so that three members of each pool remained on the list). *Id.*, Art. IX, sec. 3. After all strikes for cause were completed, each party struck one name from each pool (starting with the complainant and alternating thereafter) until only one name remained from each of the three selection pools. *Id.*, Art. IX, sec. 2.

#### 2. General Provisions Governing Depositions, Subpoenas, Production of Documents, etc.

The Rules allowed any party to request the production of documents from any other party. EDSI Rules, Art. XII, sec. 1. However, each party was permitted one deposition as of right, and additional depositions were allowed only upon request of the panel with the forewarning that "such requests are not encouraged and shall be granted in extraordinary fact situations only and for good cause shown." *Id.*, Art. XII, sec. 6.

#### 3. Adjudication Fees

The claimant was required by the Rules to pay an initial filing fee of $200.00, which fee could be waived at EDSI's discretion if it determined that the complainant was indigent and financially incapable of paying. *Id.*, Art. XIX. In addition, the parties were required to pay the fees charged by the chosen adjudicators, a schedule of which was provided to the parties, along with a summary of adjudicators' previous five years of employment history and related biographical information. *Id.*, Art. XVI, sec. 1. EDSI could require, at its discretion, that the parties prepay the estimated fees and expenses of the adjudication, prior to the commencement of the proceedings, up to $2,000.00 per party. *Id.*, Art. XVI, sec. 2. In addition, while fees and expenses were ordinarily "borne equally by the parties," the losing party to the adjudication was required to "bear between fifty percent and one hundred percent of fees and expenses of the adjudication where the substantive law so requires or where, in the view of the adjudication panel, a party has abused the processes of the EDR Rules and Procedure." *Id.*, Art. XVI, sec. 3.

#### 4. EDSI's Right to Modify the Rules and Procedures

Finally, EDSI retained the right to modify or amend the Rules at any time at its discretion. *Id.*, Art. XVII, sec. 1. Such modification or amendment resulted by way of a committee convened to make modification suggestions (composed of members of the three adjudicator selection pools discussed above, as well as EDSI representatives) or without this input. *Id.*, Art. XVII, sec. 2 (stating that a special committee "may" be convened to make recommendations and "if convened" will have such a composition).

#### C. The Ryan's/EDSI Contract for Services

We next describe the contract between EDSI and Ryan's, even though it was not

contained in the employment application packet. Compl., Ex. B ("EDSI/Ryan's Contract"). In this document, which the Arbitration Agreement specifically references,[2] Ryan's paid EDSI in exchange for EDSI's agreement to provide a number of services, including providing an arbitration forum for all employment related claims. *See* EDSI/Ryan's Contract at 1. While the Arbitration Agreement states that it is in effect for the length of an employee's term of employment with Ryan's and can only be terminated upon mutual agreement of the employee and EDSI, the EDSI/Ryan's Contract is limited in scope to a one year period, renewable from year to year thereafter, "but may be canceled by [Ryan's] upon ten (10) days written notice." EDSI/Ryan's Contract at 2.

### D. EDSI's Late Submission of Modified Rules and Plaintiffs' Motion for Sanctions

EDSI's reply brief in support of Ryan's and Johnson's motion to dismiss includes as an attachment what it represents to be modified Rules and Procedures currently in effect. Def. Employment Dispute Services, Inc.'s Memo. in Reply to Pls.' Resp. to Ryan's Mot. to Dismiss and Petition to Compel Arbitration and Stay Proceedings ("EDSI Reply.") Aff. of James P. LaCoste, Jr., Ex. A, Modified Employment Dispute Resolution Rules and Procedures ("Modified Rules"). Among other things, the Modified Rules purport to change the following provisions: they codify that the arbitration hearing will occur where the employee works, they reduce the fee structure so that the employee is only required to pay the filing fee and personal attorneys fees, and they prohibit any persons from appearing on the arbitration panel who

have an affiliation with the employer involved in the arbitration. LaCoste Aff. ¶ 15.

Plaintiffs object to our consideration of these new rules for a number of reasons, including the fact that there is no evidence that the Modified Rules have actually been adopted and implemented. Pls.' Br. in Resp. to Def. Employment Dispute Services, Inc.'s Memo ("Pls.' Br. in Resp. to EDSI Reply") at 12 (citing Aff. of Dean Jessup and Ex. A)(identifying EDSI Rules as of August 2, 2000, as not containing the purported modifications). On this basis, Plaintiffs have moved for sanctions, and requested that we strike the purported Modified Rules from the record. *See* Pls.' Combined Mot. for Sanctions and Mot. for Leave to File a Br. in Resp. to Def. Employment Dispute Services, Inc.'s Memo.

Plaintiffs request that we strike the Modified Rules is well-taken. There is no dispute that the original EDSI Rules were in force at the time the Arbitration Agreement was entered into. The original EDSI Rules formed the basis of the contract between EDSI and the Plaintiffs and are at the heart of Plaintiffs' allegations of invalidity of the alleged contractual relationship. While it is true that the Court should not act if circumstances have changed so as to make certain issues moot, we do not think that is threatened here. EDSI and Ryan's attempts to change the rules a month-and-a-half after the close of discovery on this motion does not alter our analysis, especially in light of the fact that EDSI has never established that the Modified Rules have actually been adopted or that they apply to this case. Thus, they warrant an order striking them from fur-

---

**2.** The Arbitration Agreement begins by stating that: "Your potential Employer ... has entered into an agreement with [EDSI] to arbitrate and resolve ... employment-related suits ...." and also alludes to the Ryan's/

EDSI Contract in Paragraph B. 2.D, wherein the applicant is told that she is a third-party beneficiary of "others' agreements with EDS." Compl., Ex. A, Arbitration Agreement at 1.

ther consideration. Given the dilatoriness and disingenuousness of Defendants' actions in this regard, we also are of the view that Plaintiffs' motion for sanctions ought to be *GRANTED*, the specifics of which we will reserve until a later time. Their motion for leave to file a sur-reply brief is *DENIED AS MOOT*.

### Analysis

■ We move now to a consideration of the legal merits of the arbitration agreement and the EDSI rules of arbitration. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, was enacted by Congress "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and has been adopted by American courts, and to place arbitration agreements on the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *see also Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, ——, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000) (quoting *Gilmer* ). The FAA manifests "a liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). If we find that a valid agreement to arbitrate exists between the parties and covers the matter in dispute, the proper course of action is not to dismiss the case; rather, the FAA requires that we stay any ongoing judicial proceedings, 9 U.S.C. § 3, and compel arbitration, 9 U.S.C. § 4. *E.g., Flynn v. Aerchem, Inc.*, 102 F.Supp.2d 1055, 1058 (S.D.Ind.2000); *Hires Parts*

*Serv., Inc. v. NCR Corp.*, 859 F.Supp. 349, 354–56 (N.D.Ind.1994).[3]

■ An agreement to arbitrate is to be treated like any other contract. *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir.1997). In determining whether a valid arbitration agreement arose between the parties, we look to the state law that ordinarily governs the formation of contracts; there is no dispute that Indiana's contract law is controlling here. *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995)); 9 U.S.C. § 2. If there is no contract, there is to be no forced arbitration. *Gibson*, 121 F.3d at 1130.

■ Indiana applies its ordinary contract principles in interpreting and enforcing arbitration agreements. *Id.* (citing *St. John Sanitary Dist. v. Schererville*, 621 N.E.2d 1160, 1162 (Ind.Ct.App.1993)). Under Indiana law, the party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement. *Id.* (citing *Wilson Fertilizer & Grain, Inc. v. ADM Milling Co.*, 654 N.E.2d 848, 849 (Ind.Ct.App. 1995)). Plaintiffs advance several arguments in support of their position that the arbitration agreement is not enforceable: first, they raise a series of concerns going to the alleged bias of the arbitration panel and arbitral process (alleging that the panel is structurally predisposed to be biased against them, that the discovery procedures are unfair and biased, that the hearing location rules are unfair and biased,

---

**3.** In addition to investigating whether the parties have reached a valid agreement to arbitrate their claims, we must also determine "whether Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Green Tree*, 121 S.Ct. at 521; *Gilmer*, 500 U.S. at 26, 111 S.Ct. 1647. The parties do not dispute that Title

VII claims are arbitrable. *Cf. Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361, 365 (7th Cir.), *cert. denied*, 528 U.S. 811, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999) (holding that Title VII disputes are arbitrable); *accord Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 635 (7th Cir.1999); *Flynn*, 102 F.Supp.2d at 1058.

and finally, that EDSI has vested in itself the sole discretion to interpret and modify or amend the Rules and Procedures); secondly, Plaintiffs contend that the contract is unconscionable, as evidenced by the alleged bias referenced above combined with Defendants' failure to disclose this bias prior to obtaining the Plaintiffs' signatures, the disparity of educational levels and sophistication between the Plaintiffs and Defendants' representatives, and the failure of those representatives to adequately explain the agreements' provisions upon the request of Plaintiff Sadler; third, that EDSI materially breached the implied covenants of good faith and fair dealing; fourth, that there was no consideration for the Plaintiffs' promise to arbitrate or that the Defendants made only illusory promises to the Plaintiffs to support Plaintiffs' promise; fifth, that the Plaintiffs' waivers of their right to a judicial forum for their claims were not knowing or voluntary; and finally, that the requirements of the arbitration agreement terminated when their employment ended. We consider each of the Plaintiffs' arguments in turn below.

### A. Alleged Bias in Arbitration Panel and Process

The first set of arguments raised by the Plaintiffs is directed at the specific forum in which they would be required to arbitrate their claims. "Even if arbitration is generally a suitable forum for resolving a particular statutory claim, the specific arbitral forum provided under an arbitration agreement must nevertheless allow for the effective vindication of that claim." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 313 (6th Cir. 2000); *see also Green Tree*, 121 S.Ct. at 522; *Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 637, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Otherwise, the arbitration would conflict with one of the purposes of the FAA—to

provide a suitable alternative forum for plaintiffs' claims. *Id.* (citing *Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647). Thus, a plaintiff may "make a showing that would warrant setting aside the forum-selection clauses [including] ... that proceedings 'in the contractual forum will be so gravely difficult and inconvenient that [the resisting party] will for all practical purposes be deprived of his day in court.'" *Mitsubishi Motors Corp.*, 473 U.S. at 632–33, 105 S.Ct. 3346 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)).

Plaintiffs direct our attention to two recent cases which have involved an Arbitration Agreement and EDSI Rules identical to those in the case at bar, to wit, *Floss, supra*, and *Penn v. Ryan's Family Steakhouses, Inc.*, 95 F.Supp.2d 940 (N.D.Ind. 2000). In *Floss*, the Sixth Circuit expressed "serious reservations" as to whether the arbitration forum provided by EDSI was suitable to resolve federal statutory claims, finding that "the neutrality of the forum is far from clear in light of the uncertain relationship between Ryan's and EDSI." *Floss*, 211 F.3d at 314; *see also Penn*, 95 F.Supp.2d at 943–949 (discussing panel selection and holding that the EDSI Rules do not allow for a neutral arbitration forum). The Sixth Circuit in *Floss* cited the obvious incentive for preferential treatment of the employers' claims by EDSI, given EDSI's "financial interest in maintaining its arbitration service contracts with employers [such as Ryan's]." *Floss*, 211 F.3d at 314.

The Northern District of Indiana echoed this concern, contrasting the relationship between employers and employees in this context from that in a collective bargaining setting. *Penn*, 95 F.Supp.2d at 946. Quoting the Court of Appeals for the District of Columbia, the Northern District noted that when courts are faced with an

arbitration agreement reached in a collective bargaining setting, they know that both employer and union are "repeat players" in the arbitration forum. *Id.* (quoting *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1475 (D.C.Cir.1997)). In clear contrast are cases such as *Penn* and the one at bar: while Ryan's is a repeat player (as evidenced in part by the number of cases found in the federal and state courts challenging the validity of arbitration agreements allegedly made with EDSI on behalf of Ryan's), "any ... plaintiff/employee who signs the [Arbitration Agreement] is not a repeat customer of [EDSI]—there is no equivalent interest on the other side weighing in to balance or provide a check to [EDSI's] incentive to please Ryan's." *Id.* The Northern District ruled that this "conflict of interest" was such that "any arbitration panel assembled under the EDSI provisions is susceptible to bias at the employees' expense" and that the EDSI Rules were likely to produce a panel that would not allow the plaintiff/employee to effectively vindicate her statutory claims. *Id.* at 946, 948.

We agree with the holdings of the Northern District of Indiana and the Sixth Circuit that there is a strong potential for bias in the selection of the arbitration panel. Despite Ryan's and EDSI's contention that the potential for bias is inflated and that "EDSI's financial interest ... to stay in business, [which] it will not [do] if the system is biased," we do not view those factors as sufficient protection of Ryan's employee-adversaries. Defs.' Memo. in Reply to Pls.' Resp. to Ryan's Mot. to Dismiss and Petition to Compel Arbitration and Stay Proceedings ("Ryan's Reply") at 5. In fact, we are suspicious of

EDSI's boast that "[t]he strongest marketing tool [it] can have is to be fair, impartial, and neutral," in light of the one-sided agreement EDSI has crafted and attempted to enforce. *Id.* at 5. What EDSI says is true, but apparently not necessarily for them; at least we are not persuaded by this line of argument made in this context. EDSI receives payment from its agreements with various employers to provide a forum for resolving employment disputes, while no comparable payment is made by or received from an employee for agreeing to submit to the forum. *Compare* EDSI/Ryan's Contract, *with* Arbitration Agreement. EDSI thus clearly has an incentive to maintain its contractual relationship with Ryan's and other such business partners while applicants or employees, such as Geiger and Sadler, have no leverage, having been presented with the arrangement on a take-it-or-leave-it basis. The imbalance is made even more painfully obvious by the fact that EDSI relies entirely on representatives of the employer to explain the Agreement's provisions to would be employees and to secure their signatures; Ryan's is EDSI's agent at this point and both are fully invested in the activities of the other.

EDSI also retains full authority to select both the Rules for arbitration as well as the pools of potential arbitrators. Such power in the face of the potential for bias on the part of EDSI in favor of employers such as Ryan's renders it unlikely that applicants/employees will participate in an unbiased forum.[4]

Plaintiffs also cite the hardships imposed by EDSI Rule's discovery procedures. Pls.' Resp. at 8–9. Specifically,

---

4. Plaintiffs also object to the potential for a Ryan's manager or agent to be a part of the pool of arbitrators and that the arbitration panel has the sole discretion to establish the hearing location (and could set a location that would present a hardship for the claimant).

Pls.' Resp. at 4–5, 9–10. In light of the Arbitration Agreement's other deficiencies, we do not address the substance of these concerns, though they have, we must say, raised a judicial eyebrow.

they complain that the scope of discovery is severely limited in the EDSI arbitral forum, allowing just one deposition as of right and additional depositions only at the discretion of the (arguably biased) panel, with the express policy that depositions "are not encouraged and shall be granted in extraordinary fact situations only for good cause shown." EDSI Rules, Art. XII, sec. 6. The Northern District of Indiana also considered this aspect of the EDSI Rules and found it to be troubling, noting that any application for additional depositions "is dependent upon the good graces of an arbitration panel stacked against the employee in the first place. So long as the discovery provisions are controlled by the arbitration panel, this court cannot confidently believe that this discovery procedure constitutes a fair trade-off for the 'simplicity, informality, and expedition' noted by the Court in *Gilmer*." *Penn*, 95 F.Supp.2d at 948–49 (quoting *Gilmer*, 500 U.S. at 31, 111 S.Ct. 1647 (internal quotation omitted)).

In response, Defendants contend that the EDSI discovery procedures are similar to (or surpass in terms of fairness) those approved by the Supreme Court in *Gilmer*. Ryan's Reply Br. at 6. While this may be true, in *Gilmer* the issue relating to potential for bias was not present. The discovery procedures alone do not necessarily make the forum unsuitable; rather, it is the limited discovery, controlled by a potentially biased arbitration panel, which creates the unfairness to claimants.

We next consider the issue of where the arbitration agreement places the burden for the fees. Case law suggests that agreements that require the employer to pay the fees have regularly been upheld. *Koveleskie*, 167 F.3d at 366 (noting the standard procedure in the securities industry for the employer to pay the arbitration fees).[5] Arbitration agreements which include a fee structure and place the burden for the fees on the shoulders of the employee are usually not upheld. *Floss*, 211 F.3d at 314; *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1062 (11th Cir.1998) (concluding that high costs of arbitration that may be imposed against an employee provide a legitimate basis for nullifying an arbitration agreement in part because "the arbitrability of [statutory claims] rests on the assumption that the arbitration clause permits relief equivalent to court remedies. When an arbitration clause has provisions that defeat the remedial purpose, therefore, the arbitration clause is not enforceable." (internal citations omitted)); *Shankle v. B–G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230, 1235 (10th Cir.1999); *see also Cole*, 105 F.3d at 1484–85 (upholding arbitration agreement only because the arbitration fees were to be borne solely by the employer); *but see Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 553–55 (4th Cir.2001) (holding that fee-splitting provision of arbitration agreement did not render agreement per se unenforceable, but called for a caseby-case examination of the relative costs of arbitration compared to litigation).

**5.** However, the Supreme Court has recently noted that the unsupported potential for the employee to pay a significant fee is not enough for the plaintiff to avoid an arbitration agreement when that agreement is silent as to the fee structure. *Green Tree*, 121 S.Ct. at 522. Defendants' citation to *Green Tree* is inapposite since the facts in that case contrast significantly with those here. In *Green Tree*, the arbitration agreement at issue was "silen[t] on the subject" of arbitration costs, which silence precluded the Court from invalidating the arbitration agreement on that basis. *Green Tree*, 121 S.Ct. at 522. The EDSI Rules, however, clearly lay out a proposed fee structure and place the burden for at least half of the fees squarely on the shoulders of the employee/claimant.

The potential bias discussed above, when coupled with the burdensome fees structure, cause us to conclude that a plaintiff could well be prevented from pursuing her statutory claim in the arbitration forum. Under EDSI Rules, an employee may be required to pay one-half of the arbitration panel's fees or more, and EDSI has the discretion to require that a retainer fee of up to $2,000.00 be paid to the panel up front. EDSI Rules, Art. XVI, secs. 2, 3. It takes almost no imagination to see how this fee structure "could potentially prevent an employee from prosecuting a federal statutory claim against an employer." This alone permits us to conclude that the arbitration forum provided by EDSI is inadequate as an alternative to the federal courts.

Like the Sixth Circuit in *Floss*, we have major, serious concerns about the fee structure and potential bias in the arbitral forum, but these are not the only reasons we conclude that the Arbitration Agreement cannot require either of the Plaintiffs to submit to arbitration, as further explained below. *See Floss*, 211 F.3d at 314.

### B. The Unconscionability of the Arbitration Agreement

Plaintiffs contend that we set aside the Arbitration Agreement as an unconscionable contract based on its contents, its potential for bias in the arbitral forum, the disparate bargaining power of the parties, and the Plaintiffs' lack of understanding of the terms of the agreement. Pls.' Resp. at 11. A contract is not unenforceable as unconscionable merely because one party in some ways enjoys an advantage over the other. *Flynn*, 102 F.Supp.2d at 1062 (citing *Houin v. Bremen State Bank*, 495 N.E.2d 753, 758 (Ind. Ct.App.1986)). An unconscionable contact is unenforceable when it is "such that no sensible man not under delusion, duress, or in distress would make [it], and such as no honest and fair man would accept [it]."

*Weaver v. American Oil Co.*, 257 Ind. 458, 276 N.E.2d 144, 146 (1971). In addition, there must exist a great disparity in bargaining power which led the weaker party to sign the contract unwillingly or unaware of its terms. *Id.* Indiana law places on the party seeking to enforce the contract the burden of showing "that the contractual provisions were explained to the other party and came to his knowledge and there was in fact a real and voluntary meeting of the minds." *Weaver*, 276 N.E.2d at 146.

The holding in *Weaver* was further explicated by the Indiana Supreme Court in *Carr v. Hoosier Photo Supplies, Inc.*, 441 N.E.2d 450, 454–55 (Ind.1982). After reiterating *Weaver's* holding, it explained that the plaintiff in *Weaver* had only a year-and-a-half of high school education and "'was not one who should be expected to know the law or understand the meaning of technical terms.'" *Carr*, 441 N.E.2d at 454 (quoting *Weaver*, 276 N.E.2d at 146). In contrast, the Court in *Carr* held that plaintiff's experience as an attorney practicing in the field of business law rendered unavailing a challenge to the contract as unconscionable. *Carr*, 441 N.E.2d at 455.

We have also considered whether under Indiana law an arbitration agreement signed by the Plaintiffs was unconscionable, in *Flynn*, 102 F.Supp.2d at 1062–63. In that case, several factors led us to conclude that the arbitration agreement was not unconscionable: there was virtually no disparity in bargaining power between the parties, as evidenced by the efforts of one of the Defendants to "coax [Flynn] into returning to work;" the agreement was routine and commonplace in the employment setting; and there was no suggestion that Flynn "would not have signed this Agreement had she read the document without pressure from Aer-Chem." *Id.*

Like the plaintiff in *Carr*, Geiger and Sadler had only high school educations, while the Defendants' businesses require them repeatedly to negotiate and enter into contracts, including arbitration agreements. Unlike *Flynn*, there is no evidence that Geiger's or Sadler's services "obviously were important" to Ryan's— they were individuals hired to be servers, suggesting that Ryan's saw them as little more than fungible commodities. Though as noted in *Flynn* arbitration agreements are generally common, the EDSI Arbitration Agreement is "rare and has not risen to any level of prevalence and acceptance in the minimum-wage, chain-restaurant market." *Penn*, 95 F.Supp.2d at 954. Finally, and most importantly, there is evidence that Geiger and Sadler would not have signed the Arbitration Agreement absent undue pressure from representatives of Defendant.

Although Indiana law presumes that a party has read and understood documents that he/she signs, this presumption can be overcome by evidence that the plaintiff requires or seeks assistance in understanding the terms of the agreement. *Clanton v. United Skates of America*, 686 N.E.2d 896, 901 (Ind.Ct.App.1997); *see also Flynn*, 102 F.Supp.2d at 1060 (citing *Clanton* for the proposition that we presume parties to have read the documents that they sign). In finding the contract valid, the *Clanton* court highlighted the absence of any evidence that the plaintiff made such a request. *Id.* at 901

Here, the Defendants have created a contractual setting that overcomes this presumption. Ryan's application packet of documents states in conspicuous terms, "Should you [the applicant] have any questions regarding the Arbitration Agreement and how it works, please ask the manager conducting your interview." Hart Aff., Ex. A. The packet also informs the applicant of her right to consult with an attorney. We will not venture an opinion on whether applicants are made to feel entirely free to avail themselves of these opportunities to consult a supervisory employee or even an attorney, *cf. Penn*, 95 F.Supp.2d at 954–55 (finding it unlikely that an applicant would risk her standing at an interview by questioning the application packet and appearing troublesome), but in affording such an opportunity to receive answers to any questions that applicants might have about the agreement, we do not think that the Defendants can thereafter fairly rely on a presumption that the applicant has understood the agreement's provisions.

In addition, the contractual relationship created by the employment-arbitration agreement is not defined within a single document; rather, it is shaped by three, separate documents: the Arbitration Agreement, the EDSI Rules, and the EDSI/Ryan's Contract. Although certain of the rights and obligations under the Arbitration Agreement are defined in reference to the EDSI Rules, the document requires no signature such that we can be assured that its terms were read or understood. More egregiously, certain other rights and obligations found in the Arbitration Agreement are expressed with respect to the EDSI/Ryan's contract (i.e., "I am a 'third party beneficiary['] of others' agreements with EDS.") but this contract is never provided to the applicant. A reasonable applicant reading this provision would likely conclude that the EDSI/Ryan's contract is comparable in scope to the Arbitration Agreement. However, the rights and obligations of Ryan's and the applicants vis-a-vis EDSI are not comparable. For example, not only does Ryan's pay a fee to EDSI for providing the arbitration process, but Ryan's retains the right to cancel the contract upon ten days notice. *Compare* EDSI/Ryan's Contract at 2, *with* Arbitration Agreement, sec. G

(requiring mutual termination in writing to be discontinued).

We have major doubts that a typical high school graduate would be able to read the multiple documents provided to her at her interview, comprehend the Arbitration Agreement and the EDSI Rules well enough to formulate questions as to their substance, and ask those questions during that interview. Moreover, no ordinary applicant, especially a person seeking a job as a server, could intuit, never mind understand, the rights and obligations vested in Ryan's with respect to the arbitration process when she is never apprised of those rights and obligations. These inadequacies make enforcement of the Arbitration Agreement unconscionable against either Geiger or Sadler.

 Finally, with respect specifically to Plaintiff Sadler, there is evidence that she was affirmatively misled as to the Arbitration Agreement. Sadler, who was interviewed and hired by Defendant Johnson, testified that Johnson gave her the Arbitration Agreement in a set of documents (including the federal W–2 form), told her to sign them and said that he would discuss them with her later. Dep. of Deborah Sadler ("Sadler Dep.") at 11–13. After she signed the Arbitration Agreement, Johnson explained the Arbitration Agreement to Sadler, saying: "[I]f I got into any trouble, ... Ryan's had their own lawyers." Sadler understood that statement to mean: "I guess if I got into any trouble, that if I needed a lawyer, Ryan's would have them." Id. at 13. Clearly this explanation and the resultant misunderstanding fail to accurately capture the rights and obligations contained in the Arbitration Agreement, the EDSI Rules, and the EDSI/Ryan's Contract. Such a misunderstanding or misrepresentation forecloses full comprehension of the contract by Sadler and renders the enforcement of that agreement unconscionable.

## C. Breach of the Implied Covenant of Good Faith and Fair Dealing

 Indiana law recognizes that "equitable principles [exist] which might require the court to refuse to recognize the provisions of a contract where there is allegation and proof of fraud, misrepresentation, overreaching, undue influence, unjust enrichment or undue advantage of one party over the other." *First Fed. Sav. Bank of Ind. v. Key Markets, Inc.*, 559 N.E.2d 600, 604 (Ind.1990), *quoted in Weiser v. Godby Bros., Inc.*, 659 N.E.2d 237, 239 (Ind.Ct.App.1995). " 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.' " *Weiser*, 659 N.E.2d at 240 (quoting *Prudential Ins. Co. of America v. Crouch*, 606 F.Supp. 464, 469 (S.D.Ind.1985), *aff'd*, 796 F.2d 477 (7th Cir. 1986)).

 While we do not at this juncture pass on the merits of Plaintiffs' fraud claims (Am. Compl. Counts XI–XIV), the combination of a failure to disclose the EDSI/Ryan's Contract and of implying that it contained rights and obligations identical to the Arbitration Agreement can be compelling evidence of fraud or misrepresentation sufficient to support a finding that EDSI and Ryan's breached their duties of good faith and fair dealing. We will postpone to another day any entitlement to affirmative relief on the basis of fraud but hold at this point that this evidence of a lack of good faith and fair dealing suffices as a further reason for us not to enforce the arbitration agreement.

## D. Consideration/Illusory Promise

 Plaintiffs also object to the enforcement of the Arbitration Agreement for lack of consideration (or, alternatively,

that any promise made by the Defendants was illusory). For a contract to be binding, both parties must be bound by the terms of the agreement, and the promissee must give some consideration for the promise made by the promisor. *Flynn*, 102 F.Supp.2d at 1060. Consideration is defined as a "bargained for exchange whereby the promisor [here Plaintiffs] receives some benefit or the promisee [here Defendants] suffers a detriment." *Gibson*, 121 F.3d at 1130 (citations omitted). Absent "mutuality of obligation," a contract based on reciprocal promises lacks consideration; stated another way, "there can be no contract unless both parties are bound." *Rogier v. American Testing and Eng'g Corp.*, 734 N.E.2d 606, 618 (Ind.Ct.App. 2000); *see also Floss*, 211 F.3d at 315 (holding that an arbitration agreement identical to the one at bar contained illusory promises and failed for lack of consideration); *cf. Pardieck v. Pardieck*, 676 N.E.2d 359, 364 n. 3 (Ind.Ct.App.1997) (citing RESTATEMENT (SECOND) OF CONTRACTS § 2 cmt. e (1981) and acknowledging the illusory promise doctrine under Indiana law).

The Seventh Circuit has previously held that an employer's promise to arbitrate can act as consideration for the employee/applicant's promise to do the same. *E.g., Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th Cir.1985); *Flynn*, 102 F.Supp.2d at 1060. Likewise, an employer's promise to provide a forum for the arbitration proceedings can act as sufficient consideration for the employee's agreement to arbitrate all disputes. *Flynn*, 102 F.Supp.2d at 1060; *Penn*, 95 F.Supp.2d at 950. In a similar fashion, the Seventh Circuit has indicated that an employer's promise not to terminate immediately an at-will employee could be sufficient consideration for the employee's promise. *Gibson*, 121 F.3d at 1132; *Flynn*, 102 F.Supp.2d at 1060; *Leather-*

*man v. Mgmt. Advisors, Inc.* 448 N.E.2d 1048, 1050 (Ind.1983).

Plaintiffs contend that EDSI's ability to change the Rules at any time without notice or consent, Ryan's ability to revoke the EDSI/Ryan's Contract on a mere ten-days notice, and the potential for bias in the arbitral forum indicate that Plaintiffs received no consideration for their promise to arbitrate. Pls.' Resp. at 14. Ryan's and EDSI respond that consideration for Plaintiffs' promises is found in EDSI's promise to "provide[ ] a neutral forum for the expeditious and cost-effective resolution of employment-related claims" and that Plaintiffs are third-party beneficiaries to the "reciprocal promise by Ryan's to submit such disputes arising prior to termination of the contract to the EDSI dispute resolution program, and to be bound by the results of such proceedings." Ryan's Reply at 10; EDSI Reply at 13–14. Once again, we agree with the Plaintiffs that the Arbitration Agreement lacks the consideration necessary to make it binding upon the Plaintiffs.

In *Floss*, the Sixth Circuit held that the an arbitration agreement identical to the one at issue here contained an illusory promise by EDSI. *Id.* at 315. Specifically, the court concluded that EDSI's "right to choose the nature of its performance renders its promise illusory." *Id.* at 316. Quoting Professor Williston, the court stated that: "Where a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement. The unlimited choice in effect destroys the promise and makes it merely illusory." *Id.* (quoting 1 SAMUEL WILLISTON, CONTRACTS § 43, at 140 (3d ed.1957)). Applying Tennessee and Kentucky law to the agreement, the court found that the agreement lacked consideration and could not be enforced. *Id.; but see Penn*, 95 F.Supp.2d

at 950 (finding that consideration existed for Penn's agreement to arbitrate in EDSI's agreement to provide the arbitral forum because the agreement "clearly shows the presence of consideration and no evidence to the contrary").

We are not troubled by any apparent inconsistency between the holdings in *Floss* and *Penn*; rather, we simply disagree with *Penn* 's conclusion that there is sufficient consideration for the Plaintiffs' promises to arbitrate. In part, our differing conclusion is driven by our interpretation of how the EDSI/Ryan's Contract impacts the promises contained in the Arbitration Agreement.[6] The force of EDSI's promise to provide an arbitral forum (one that has been passed on as being unsuitable in its present form) is weakened both by the potential for bias that exists in the procedures and the fact that EDSI contains the unlimited discretion to alter its obligations under the EDSI Rules without notice to or the consent of the Plaintiffs. The Agreement's failure to bind EDSI is even more readily apparent upon review of the EDSI/Ryan's Contract.

 Contract terms can be incorporated by reference in a separate document and "[c]onsideration for the promise in one instrument may be contained in another." *Gibson*, 121 F.3d at 1131 (citing *Orr v. Westminster Village North, Inc.*, 651 N.E.2d 795, 801 (Ind.Ct.App.1995), *vacated* 689 N.E.2d 712 (Ind.1997) (on grounds that employee handbook cannot convert at-will employee relationship into one for cause); *Goeke v. Merchants Nat'l Bank and Trust Co. of Indianapolis*, 467 N.E.2d 760, 768 (Ind.Ct.App.1984)). It is undis-

puted that the Arbitration Agreement at issue here expressly references the EDSI/Ryan's contract, both in setting out the reason for the Arbitration Agreement and in assigning "third party beneficiary" status to Plaintiffs, their employers, and their employers agents. Compl., Ex. A, Arbitration Agreement. We therefore move to examine any limitations contained in the EDSI/Ryan's Contract in our attempt to determine whether consideration exists for the Plaintiffs' promises.

EDSI is bound by its promise to Plaintiffs only to the extent that Ryan's is bound to submit to the forum, for without Ryan's consent EDSI can provide no benefit to Plaintiffs. EDSI/Ryan's Contract contains an escape clause whereby Ryan's can cancel its Contract with EDSI on ten days notice. Compl., Ex. B. This provision stands in clear contrast to the mutual termination clause found in the Arbitration Agreement, thus negating any consideration that Plaintiffs might be deemed to receive from EDSI's promise to provide the forum. Similarly, the ten-day escape clause eliminates consideration that might otherwise exist or flow from Plaintiffs' "third-party beneficiary" status, as alluded to in the Arbitration Agreement.

The only possible promise left that might serve as consideration for Plaintiffs' promise to submit to arbitration is found in Ryan's statement that it will not consider the employment application without the applicant agreeing to submit to arbitration. Such a promise is far removed from an employer's promise not to terminate an at-will employee or a promise of employment. The alleged benefit provided by Ryan's promise is merely a promise to consider an

---

**6.** *Penn* does not consider the impact of a comparable contract between EDSI and Ryan's.

applicant's application, not employ her. This promise, standing alone, will not bear the weight required to allow us to construe the Arbitration Agreement as a binding contract.

We have now laid out several highly convincing reasons why this agreement can not be enforced to require the Plaintiffs to submit to arbitration. Alone, each of these reasons would suffice; their combined force is overwhelming.[7]

### Conclusion

For the reasons stated herein, Defendants' motion to dismiss and its alternative petition to stay the proceedings and compel arbitration is *DENIED*. The case shall remain within this Court's jurisdiction and the parties shall proceed forthwith towards a resolution of the controversy.

---

7. Plaintiffs have also contended that their consent to arbitrate was not knowing and voluntary, a standard they argue we must apply to the arbitration of Title VII claims. We do not address this argument except to the extent it is incorporated into our discussion on unconscionability. *Cf. Gibson*, 121 F.3d at 1130 (declining to require a knowing and voluntary waiver of federal civil rights in a predispute arbitration setting); *Flynn*, 102 F.Supp.2d at 1060 n. 2 (noting that the Seventh Circuit has yet to rule on whether a knowing and voluntary consent is a prerequisite for agreeing to arbitration). Furthermore, Plaintiffs' argument that their obligations under the Arbitration Agreement concluded when their employment was terminated conflicts with the explicit language of the Arbitration Agreement which requires the arbitration of all employment-related disputes "even if the Agreement has been terminated since the date of the claim." Compl., Ex. A, Para. B.2.E. This language clearly contemplates that the Agreement's effect is determined at the time the claim arises, not when it is finally brought in court.