IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 21, 2011 Session

**DAVID WHITE**

v.

**EMPIRE EXPRESS, INC. AND EMPIRE TRANSPORTATION, INC.**

An Appeal from the Chancery Court for Shelby County
No. CH-08-0107-2     Arnold Goldin, Chancellor

No. W2010-02380-COA-R3-CV - Filed December 13, 2011

The case involves a lease-purchase agreement. The plaintiff truck driver worked for the defendant hauling company. He entered into a lease-purchase agreement with the co-defendant leasing company, affiliated with the employer hauling company, to purchase the truck he drove in his employment. At the end of the lease, the leasing company refused to transfer title to the truck to the plaintiff. The plaintiff then filed this lawsuit against both defendant companies, alleging breach of contract, conversion, and violation of the Tennessee Consumer Protection Act. The defendants asserted the affirmative defenses of set-off and recoupment based on the plaintiff's employment agreement. After a bench trial, the trial court held in favor of the plaintiff on all of his claims. However, based on an arbitration provision in the employment agreement, it granted the plaintiff's motion to dismiss and to compel arbitration of the defendants' affirmative defenses of set-off and recoupment. The defendants now appeal. In light of the trial court's order compelling arbitration, we dismiss the appeal and remand for entry of an order staying the proceedings pending the arbitration.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed and Cause Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID. R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Richard Glassman and Lewis W. Lyons, Memphis, Tennessee, for the Defendant/Appellants Empire Express, Inc., and Empire Transportation, Inc.

Saul Belz and Andre B. Mathis, Memphis, Tennessee, for the Plaintiff/Appellee David White

# OPINION

## FACTUAL BACKGROUND

Defendant/Appellants Empire Express, Inc. ("Hauling Co."), and Empire Transportation, Inc. ("Leasing Co."), are two affiliated Tennessee corporations. The Hauling Co. was formed by Ed Gatlin ("Gatlin") and his son, Tim Gatlin ("Tim"), in 1986 as an irregular route truckload carrier that hauls freight to the forty-eight continental United States. The Leasing Co. has the same owners, Gatlin and Tim, and was formed in 1989 or 1990. The Leasing Co. owns the trucks and trailers used by the Hauling Co.

The finances of the two affiliated corporations are interrelated. The Leasing Co. does not maintain a balance in its bank account. Rather, its bank account operates as a "sweep account," whereby its balance is swept to zero on a daily basis, and all funds at the end of each day are deposited in the Hauling Co. bank account. If the Leasing Co. writes a check, it is automatically covered as a draw from the Hauling Co. bank account. When the Leasing Co. acquires trucks for its lease-purchase program, the truck purchases are financed. The Hauling Co. provides cross-collateralization and a guaranty as part of the collateral that the Leasing Co. puts up for the financing of the trucks.

Plaintiff/Appellee David White ("White") began working for the Hauling Co. in 2000 as a "company employee" driving a company-owned truck. The next year, in 2001, the Leasing Co. began offering a lease-purchase program to drivers who wanted to own their own trucks. White decided to participate in this lease-purchase program.

To this end, on January 18, 2002, White executed a Lease-Purchase Agreement ("Lease") with the Leasing Co. for a 2000 Classic Freightliner XL truck, with the option to purchase the truck by paying its residual value at the end of the Lease. Under the Lease, White had several financial obligations. The Lease required White to (1) make rental payments of $1,909.05 per month for 48 months, payable in weekly installments of $440.55; (2) pay for fuel, excess mileage charges, insurance, certain taxes, and communication system costs; and (3) pay for all repairs and maintenance to the truck. Paragraph 15 of the Lease provided that any liability incurred by White to the Leasing Co. would become payable by White as additional rent for the truck.

If White fulfilled all of these obligations, paragraph 24 of the Lease gave White the right to purchase the truck at the end of the 48-month term by making a balloon payment of $22,908.60, which was the residual value of the truck. However, that same paragraph of the Lease included a proviso that White forfeited his right to purchase the truck if he failed "to have all payments required under this Lease paid in full at the end of this Lease."

On January 21, 2002, White executed two more agreements that were related to the Lease. The first was a "Contract Hauling Agreement" (also called the "Employment Agreement") with the Hauling Co., which made White an independent contractor of the Hauling Co. and set out the terms of his employment. Under the Employment Agreement, White was responsible for "[s]electing, purchasing, financing, and maintaining" the truck, and paying "all operating expenses and repairs" to the truck. The second related contract White executed was a "Direct Pay Authorization," under which he agreed to allow the Hauling Co. to deduct from his earnings and pay to the Leasing Co. (on White's behalf) any amounts White owed under the Lease.[1] Under the Employment Agreement, the Hauling Co. was authorized to deduct any amount owed by White to the Hauling Co. directly from White's weekly paycheck.

White continued to work for the Hauling Co. as an independent contractor from January 2002 until August 2007, while participating in the lease-purchase program. During this time, in accordance with the Direct Pay Authorization and the Employment Agreement, the Hauling Co. made weekly deductions for amounts White owed to the Leasing Co. and to the Hauling Co., even if White did not earn enough money in a given week to cover the expenses. If White earned enough money during the week to cover the total amount of deductions, White was paid the difference. If, however, he did not earn enough money to cover the deductions, the Hauling Co. would make the deductions anyway, and the deficit became a debt that White owed to the Hauling Co. In this way, all of White's truck rental payments to the Leasing Co. were made in a timely manner, even though some of the rental payments were made with money borrowed from the Hauling Co. Every week, White received a settlement sheet from the Hauling Co. that detailed his earnings, expenses, and the amount of the debt that White accumulated for advances made to him by the Hauling Co.

In May 2006, after White had made his final rental payment under the Lease, he sought to exercise his option to purchase the truck by paying off its residual value pursuant to the Lease. Over the next year, White was permitted to continue to drive the truck for the Hauling Co., while he made the payments for the residual value in weekly installments. When he made his final rental payment in May 2006, White owed the Hauling Co. $2,271.77 in cash advances and loans as reflected in the weekly settlement sheets sent to White. However, the parties did not discuss how White's accumulated debt affected his ability to purchase the truck.

---

[1]The record is unclear as to whether these deductions for amounts due under the Lease were ever actually transferred to the Leasing Co. It appears that the amounts may have been simply retained by the Hauling Co., and that this was deemed to satisfy White's obligation to the Leasing Co. under the Lease.

From May 18, 2006, until May 3, 2007, White made weekly payments of $468.23 through payroll deductions to pay the $22,908.60 residual value of the truck. Over that year, however, White's debt to the Hauling Co. increased substantially as a result of these and other weekly deductions related to Lease expenses, repairs and maintenance on the truck, and other advances made to White by the Hauling Co.

On May 10, 2007, the balance remaining on the residual value of the truck, $1,370.02, was deducted from White's paycheck. By that time, as reflected in the settlement sheets, White's debt to the Hauling Co. totaled over $25,000.

Shortly after White made the final payment on the residual value, he went to Mr. Gatlin to ask for title to the truck. White also told Gatlin that the Hauling Co. needed to assign him more miles to drive, so that he could earn more money. Gatlin refused to give White the title to the truck, explaining that his refusal was because White owed money to "the company" in an amount that exceeded the value of the truck. Gatlin told White that he had to pay this accumulated debt in order to receive title to the truck.

Later, Gatlin and White had another conversation over the telephone. In this conversation, White told Gatlin that he wanted title to the truck so that he could drive routes for another carrier. Gatlin again refused, and he again told White that he could not have title to the truck because of his debt to "the company." On that day, Gatlin considered White to be in default on the Lease. Consequently, after that conversation, Gatlin had the truck repossessed from White's home and brought back to the Leasing Co., without giving prior notice to White. A week or two later, the Leasing Co. sold the truck to a third party for $18,000, again without giving notice to White.

### PROCEEDINGS BELOW

On January 16, 2008, White filed the instant lawsuit against the Hauling Co. and the Leasing Co. (collectively, "Defendants") for declaratory judgment, breach of contract, violation of the Tennessee Consumer Protection Act ("TCPA"), and conversion.[2] White alleged that he had made all of the truck rental payments and paid the residual value of the truck under the Lease, and consequently the Defendants' refusal to transfer title of the truck to him was a breach of the Lease. In addition, White contended, the Defendants converted his truck by repossessing it, and their conduct amounted to unfair or deceptive acts under the TCPA. White sought compensatory and punitive damages for the breach of contract and conversion claims, and he sought treble damages and attorney fees under the TCPA.

---

[2]Willie Cockal was named as a co-plaintiff in the original complaint, but his claims were dismissed, and they are not at issue in this appeal.

On July 11, 2008, the Defendants filed an amended answer in which they admitted that White had made all of the rental payments toward the purchase of the truck. Their answer claimed, however, that White defaulted under the Lease by failing to pay his accrued debt to the Hauling Co. The Defendants added a counterclaim, seeking a declaration that White failed to satisfy his obligations under the Lease, and also seeking a judgment for all damages suffered from White's breach of the Lease, including attorney fees incurred in defending the lawsuit. Discovery ensued.

On April 28, 2009, the Defendants filed a motion for summary judgment. The motion asserted that, based on the undisputed facts, White forfeited his option to purchase the truck and lost his right to possession because he was in default under multiple provisions of the contract.[3] Alternatively, the Defendants argued in their motion that the Leasing Co. was an intended third-party beneficiary of White's Employment Agreement with the Hauling Co. The Defendants also claimed that they were entitled to summary judgment on their counterclaim for attorney fees and other damages pursuant to the Lease, and on their claim for attorney fees under the TCPA, because White's claim was "frivolous and totally lacking factual and legal support." Tenn. Code Ann. § 47-18-109(e)(2).

On the same day, White filed a cross-motion for partial summary judgment. In White's cross-motion, he argued that the undisputed facts established that he had satisfied his obligations under the Lease by making all of the weekly rental payments, and that he exercised his option to purchase the truck by paying off the residual value of it. White asked the trial court to grant him partial summary judgment by declaring that the Defendants breached the Lease, and by holding that the Defendants were liable to him for conversion of the truck.

On June 5, 2009, the trial court conducted a hearing on the parties' cross-motions for summary judgment.[4] On June 16, 2009, the trial court entered an order on the parties' motions. The order granted in part White's motion for partial summary judgment and denied in total the Defendants' motion for summary judgment. The trial court agreed with the Defendants' assertion that White owed "a sum of money" to the Hauling Co. under the Employment Agreement, but found nevertheless that White had met all of his obligations to the Leasing Co. under the Lease, which was a separate contract. Accordingly, as to White's breach of contract claim, the trial court granted White's motion for summary judgment and denied the Defendants' cross-motion. The trial court denied the parties' motions for

---

[3]Presumably, the "contract" to which the Defendants referred was the Lease, although this is not stated expressly.

[4]A transcript of that hearing was not included in the appellate record.

summary judgment in all other respects. Both parties filed motions for reconsideration and/or clarification of the trial court's order; these motions were denied in all respects.

On August 19, 2009, the Defendants filed a motion to amend their answer to add the affirmative defenses of set-off and recoupment. The Defendants alleged that the undisputed evidence showed that White owed the Hauling Co. over $20,000 for the amounts advanced to him pursuant to the Employment Agreement. They argued that any amounts White recovered in this lawsuit should be reduced by the amount that he owed the Hauling Co. Over White's objection, on September 18, 2009, the trial court entered an order permitting the Defendants to amend their answer to include the affirmative defenses of set-off and recoupment.

On the eve of trial, February 1, 2010, White filed a motion to dismiss and to compel arbitration of the Defendants' affirmative defenses of set-off and recoupment. White's motion cited the provisions in the Employment Agreement which stated: "Any disagreement or litigation arising under this Contract shall be referred to mandatory arbitration . . . ."[5] White argued that, because the Defendants' affirmative defenses of set-off and recoupment constitute a "disagreement or litigation arising under" the Employment Agreement, these claims must be referred to arbitration. On this basis, White asked the trial court to "enter an order compelling the parties to submit to arbitration on Defendants [sic] affirmative defenses of set-off and recoupment." The motion was taken under advisement.

On February 2, 2010, a bench trial was conducted on the parties' remaining claims — damages for the Defendants' breach of contract, White's claims under the TCPA, and White's claim of conversion, and also on the Defendants' affirmative defenses of set-off and recoupment. On April 15, 2010, the trial court entered its findings of fact and conclusions of law, holding in favor of White on all of his claims. The trial court awarded White a judgment of $18,000 in damages against the Leasing Co. for breach of the Lease, $18,000 for violations of the TCPA against both Defendants, and $18,000 for conversion of the truck against both Defendants. The trial court awarded punitive damages against the Defendants on the conversion claim, stating that the amount of the punitive damages would be determined at a future hearing. In addition, the trial court determined that the Defendants' actions justified an award of treble damages under the TCPA.[6] Regarding the Defendants' affirmative defenses of set-off and recoupment, the trial court held that they were subject to

_____

[5]The Lease does not contain an arbitration provision.

[6]White was required to choose between the award of punitive damages based on conversion and treble damages based on violations of the TCPA after the hearing on punitive damages.

the arbitration provision in the Employment Agreement; it granted White's motion to dismiss and to compel arbitration of these defenses.

After a hearing, on September 16, 2010, the trial court entered an order awarding White $100,000 in punitive damages. In a separate order, after another hearing, the trial court awarded White $88,266.25 in attorney fees and $5,035.13 in expenses pursuant to the TCPA. On October 1, 2010, the trial court entered an order entitled "Final Judgment" detailing all of its previous awards.[7] The Defendants now appeal.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

The Defendants raise several issues for review in this appeal. However, pursuant to Rule 13(b) of the Tennessee Rules of Appellate Procedure, we must first consider whether this Court has subject matter jurisdiction to hear this appeal. Tenn. R. App. P. 13(b); *see Person v. Kindred Healthcare, Inc.*, No. W2009-01918-COA-R3-CV, 2010 WL 1838014, at *2 (Tenn. Ct. App. May 7, 2010); *see also State ex rel. Garrison v. Scobey*, No. W2007-02367-COA-R3-JV, 2008 WL 4648359, at *4 (Tenn. Ct. App. Oct. 22, 2008). Subject matter jurisdiction concerns the authority of the Court to hear a matter. Lack of appellate jurisdiction cannot be waived, and the parties cannot consent to the existence of appellate subject matter jurisdiction. *Person*, 2010 WL 1838014, at *2; *Boykin v. Casher (In re Estate of Boykin)*, 295 S.W.3d 632, 635 (Tenn. Ct. App. 2008). Even when parties do not raise the issue, this Court must consider its own subject matter jurisdiction *sua sponte*. *Ruff v. State*, 978 S.W.2d 95, 98 (Tenn. 1998); *Boykin*, 295 S.W.3d at 635. The determination of whether subject matter jurisdiction exists is a question of law to be determined *de novo* on the record. *Elite Emergency Servs., LLC v. Stat Solutions, LLC*, No. M2008-02793-COA-R3-CV, 2010 WL 845392 (Tenn. Ct. App. Mar. 10, 2010).

## ANALYSIS

This appeal encompasses all of the trial court's rulings, set out in five separate orders: (1) the June 16, 2009 order granting in part White's motion for partial summary judgment and denying the Defendants' motion for summary judgment, (2) the April 15, 2010 findings of fact and conclusions of law resulting from the trial, (3) the September 14, 2010 order granting White attorney fees and costs, (4) the September 16, 2010 order awarding White punitive damages, and (5) the October 1, 2010 "Final Judgment" entered by the trial court capsulizing the rulings in the previous orders.

---

[7]On December 30, 2010, this Court remanded the matter to the trial court to adjudicate the Defendants' counterclaim against co-plaintiff Willie Cockal. On January 4, 2011, the trial court entered an amended final order dismissing those claims with prejudice.

Although the "Final Judgment" details the various damage awards granted to the Plaintiff on all of his claims, it does not allude to the Defendants' affirmative defenses of set-off and recoupment. In its previous April 15, 2010 order, the trial court had granted White's motion to dismiss and to compel arbitration of these affirmative defenses. The order states:

> White's Motion to Dismiss and Compel Arbitration on Defendants' Affirmative Defenses of Setoff and Recoupment is GRANTED and the Hauling Company's affirmative defenses of setoff and recoupment are hereby DISMISSED without prejudice. The parties shall submit the Hauling Company's affirmative defenses of setoff and recoupment to arbitration as set forth in the Hauling Agreement.

In Tennessee, under the Tennessee Uniform Arbitration Act, ("TUAA"), Tennessee Code Annotated § 29-5-303(d),[8] when a motion to compel arbitration is granted, "the correct procedure in the trial court is to stay the matter pending arbitration and not to dismiss it." *Thompson v. Terminix Int'l Co.,* No. M2005-02708-COA-R3-CV, 2006 WL 2380598, at *3 (Tenn. Ct. App. July 11, 2006) (citing *Geiger v. Ryan's Family Steak Houses, Inc.*, 134 F. Supp.2d 985, 993 (S.D. Ind. 2001), and *M.R. Dillard Constr. v. J.P. Realty, II, Inc.*, No. M1999-01250-COA-R3-CV, 2000 WL 48497, at *1 (Tenn. Ct. App. Jan. 21, 2000)); *see also Barclay v. Kindred Healthcare Operating, Inc.*, No. W2008-02828-COA-R3-CV, 2009 WL 2615821, at *2 (Tenn. Ct. App. Aug. 26, 2009). The TUAA also provides that, "if the issue is severable, the stay may be with respect thereto only." Tenn. Code Ann. § 29-5-303(d) (2000). Regardless of whether the stay is ordered for the entire case or only for the issue that is subject to arbitration, "the order for arbitration *shall* include such stay." *Id.* (emphasis added).

It is well settled that, under the appealability provision of the TUAA, Tennessee Code Annotated § 29-5-319,[9] an order granting a motion to compel is not a final, appealable order.

---

[8]That subsection provides:

> (d) Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only. When the application is made in such action or proceeding, the order for arbitration shall include such stay.

Tenn. Code Ann. § 29-5-303(d) (2000).

[9]Section 29-5-319 sets out the types of orders related to arbitration from which appeals may be taken:

> (a) An appeal may be taken from:

(continued...)

*See T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 864-65 (Tenn. Ct. App. 2002). In the case at bar, the trial court's order did, in fact, compel arbitration of the issues of set-off and recoupment. However, the order also "dismissed" those defenses; it did not stay the matter as mandated under the TUAA. This Court has held that, while an order improperly dismissing an action, rather than staying it, and compelling arbitration, may appear "technically" to be a final order of dismissal under Rule 3(a) of the Tennessee Rules of Appellate Procedure,[10] such an order in fact "amounts to an end run around" the appealability provisions of the TUAA. *Barclay*, 2009 WL 2615821, at *2 (quoting *Thompson*, 2006 WL 2380598, at *3); *see also Person*, 2010 WL 1838014, at *4. Given this unusual procedural posture, where the trial court has erroneously attempted to simultaneously "dismiss" a claim or issue and also compel arbitration of the same claim or issue, instead of staying the proceedings, this Court has determined that we must dismiss the appeal and remand for the trial court to stay the proceedings pending arbitration. *See Barclay*, 2009 WL 2615821, at *2; *Thompson*, 2006 WL 2380598, at *3; *see ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091, 1102 (6th Cir. 2002) (noting that the trial court retains jurisdiction over collateral matters during the stay); *Jolley v. Paine Webber Jackson & Curtis, Inc.*, 864 F.2d 402, 405 (5th Cir. 1989) (stating that granting a stay "contemplates that the district court will retain jurisdiction to confirm, modify, or, in some cases, to renew the litigation despite the arbitration award").

We note that, while the order of the trial court below, dismissing the affirmative defenses and compelling arbitration, may appear to "technically" satisfy the finality requirements of Rule 3(a), in reality it does not. The Tennessee Supreme Court has recognized that appellate courts have jurisdiction over final judgments only, "[u]nless an appeal from an interlocutory

---

[9](...continued)

> > (1) An order denying an application to compel arbitration made under § 29-5-303;
> > (2) An order granting an application to stay arbitration made under § 29-5-303(b);
> > (3) An order confirming or denying confirmation of an award;
> > (4) An order modifying or correcting an award;
> > (5) An order vacating an award without directing a re-hearing; and
> > (6) A judgment or decree entered pursuant to the provisions of this part.
> (b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

Tenn. Code Ann. § 29-5-319 (2000). Notably, an order *denying* a motion to compel arbitration, although interlocutory, is specified as an appealable order in Section 29-5-319(a)(1).

[10]Rule 3(a) provides that appeals may be had only of final judgments that adjudicates "all the claims, rights, and liabilities of all the parties." Tenn. R. App. P. 3(a).

order is provided by the rules or by statute." ***Bayberry Assocs. v. Jones***, 783 S.W.2d 553, 559 (Tenn. 1990); ***see also Ruff v. Raleigh Assembly of God Church, Inc.***, 241 S.W.3d 876, 877 at n.1 (Tenn. Ct. App. 2007). A final judgment is "one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.' " ***Henderson v. Henderson (In re Estate of Henderson)***, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting ***State ex rel. McAllister v. Goode***, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). Tennessee Rule of Appellate Procedure 3(a) provides in relevant part that "any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable . . . ." Tenn. R. App. P. 3(a). "Such an order is interlocutory or interim in nature and generally cannot be appealed as of right." ***Henderson***, 121 S.W.3d at 645. Thus, it is well settled that "any trial court order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not final or appealable as of right." ***State ex rel. Garrison v. Scobey***, No. W2007-02367-C0A-R3-JV, 2008 WL 4648359, at *5 (Tenn. Ct. App. Oct. 22, 2008).

In this case, we must note that the affirmative defenses of set-off and recoupment are not separable "claims" brought by the Defendants.[11] They are defenses that, if proven, would apply against any damage award granted to White. In other words, they do not exist independently of White's claims in this case, and resolution of the issues that are the subject of arbitration will not end the matter. Because those defenses were dismissed and referred to arbitration, the trial court has not even considered whether and to what extent the Defendants' right to set-off or recoupment may apply to White's damage award.[12] Therefore, because the arbitration has not been conducted and the extent of the Hauling Co.'s defenses has not been determined, the trial court's award in favor of White was not an adjudication of "all the claims, rights, and liabilities of all the parties," and Rule 3(a) has not even "technically" been satisfied.[13]

---

[11]The Defendants did not assert a counterclaim against White based on the amounts that White owes the Hauling Co. Rather, the defenses of set-off and recoupment were asserted only after the trial court granted summary judgment in favor of White on his claim that the Defendants breached the Lease.

[12]The extent to which the Hauling Co. was found liable under the Lease is unclear, and the extent to which the claim of set-off is available to the Leasing Co. is also unclear. We note that, in the trial court's orders, the Hauling Co. and the Leasing Co. are often aggregated together, when in reality the liabilities of each corporation is likely separate and distinct, so clarification on remand is essential if further appeals are contemplated.

[13]For the same reason, this Court did not have the option of remanding the case so that the trial court could make the October 1, 2010 "Final Judgment" order final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure.

In sum, we find that the trial court's action in dismissing and compelling arbitration of the affirmative defenses of set-off and recoupment was contrary to the mandate of the TUAA, and that it should have stayed the matter pending arbitration. Because the trial court compelled arbitration of those defenses, it did not resolve all the rights and liabilities of all the parties, and the matter is not final and appealable under Rule 3(a). Therefore, we do not address the issues raised on appeal, but instead dismiss the appeal and remand with instructions for the trial court to stay the matter pending arbitration, and thereafter to conduct further proceedings to determine whether and to what extent White's damage award is affected by the decision reached in arbitration.[14]

## CONCLUSION

The appeal is dismissed for lack of jurisdiction and remanded for further proceedings consistent with this Opinion. Costs on appeal are to be taxed to Appellants Empire Express, Inc., and Empire Transportation, Inc., and their sureties, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE

---

[14]We are mindful that, under the Federal Arbitration Act, an order compelling arbitration and dismissing all of the claims before it is considered to be a final, appealable order. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 88-89 (2000). Nevertheless, even if the FAA were applicable to the underlying contract, the state law on appealability governs this procedural issue. *Morgan Keegan & Co. v. Smythe*, No. W2010-01339-COA-R3-CV, 2011 WL 5517036 (Tenn. Ct. App. Nov. 14, 2011). Even under federal jurisprudence, however, it appears that the rule on appealability applies only when the trial court has dismissed all of the claims before it and leaves nothing for the trial court to decide. When some claims are arbitrable but others are not, an order dismissing and compelling arbitration of the arbitrable claims only is not a final, appealable order. *See In re Hops Antitrust Litigation*, 832 F.2d 470, 473-74 (8th Cir. 1987); *see Green Tree*, 531 U.S. at 88-89. Therefore, the trial court's decision would not be considered to be final and appealable even under federal law.